TRUEL v CITY OF DEARBORN

Docket No. 290600. Submitted May 5, 2010, at Detroit. Decided December 14, 2010, at 9:10 a.m.

Christopher Truel, a police officer in the city of Dearborn, brought suit in the Wayne Circuit Court against the city of Dearborn and several of its police officers, alleging violations of the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq*. He alleged that he had cooperated in investigations regarding a bar fight that allegedly involved several Dearborn police officers, and he asserted that he consequently had been investigated for being a "dirty cop" and that he suffered depression and anxiety from these incidents. He alleged that the Wayne County Prosecuting Attorney's office (WCPO) and the Michigan State Police had conducted an investigation regarding the bar fight and had concluded that it did not involve any illegal activity by Dearborn police officers. Defense counsel requested the file from the investigation under the Freedom of Information Act (FOIA), MCL 15.231 *et seq*. The WCPO responded to the request, but withheld the statements of four Dearborn police officers, given pursuant to investigative subpoenas, and the final report of the investigation. Defense counsel then subpoenaed the information that had been withheld and the WCPO denied the request, claiming that the materials were privileged work product and protected by the deliberative process privilege, and that transcripts of the statements and records were confidential under MCL 767A.8. Defendants then filed a motion to compel discovery in plaintiff's action, and the court, Gershwin A. Drain, J., granted the motion. The WCPO appealed.

The Court of Appeals *held*:

1. MCL 767A.8 makes confidential certain items related to an investigation, including (1) petitions for immunity, (2) orders granting immunity, (3) transcripts of testimony delivered to witnesses pursuant to grants of immunity, and (4) records, documents, and physical evidence obtained by the prosecuting attorney pursuant to an investigation under the investigative-subpoena statutes. Under MCL 767A.5(6), transcripts of witness testimony are only available to a criminal defendant when the charges result

from information obtained through investigative subpoenas and (a) the testimony is that of the defendant or (b) the testimony is that of witnesses who will testify at trial. Because defendants were not entitled to the transcripts of statements given by the four police officers, the trial court abused its discretion by granting defendants' motion to compel the WCPO to produce the transcripts.

2. The deliberative-process privilege protects governmental material that would reveal advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated. The privilege is qualified rather than absolute, and it can be overcome by a sufficient showing of need, which must be determined on a case-by-case, ad hoc basis. The court must balance the evidentiary need against the harm that could result from disclosure, taking into account such factors as the relevance of the evidence, the availability of other evidence, the seriousness of the case, the role of the government, and the chilling effect on future governmental action. Plaintiff's suit was premised on his compliance in the investigations into the bar fight and alleged subsequent cover-up. Because the mere act of participating in the investigations is itself protected activity, the truth and credibility of the subpoenaed statements of the police officers is irrelevant to a determination whether defendants harassed plaintiff, denied him promotions, and accused him of misconduct, and the trial court abused its discretion by granting defendants' motion to compel the WCPO to produce the final report of the investigation.

Reversed and remanded.

1. PRETRIAL PROCEDURE — DISCOVERY — INVESTIGATIVE SUBPOENAS — CONFIDENTIALITY.

MCL 767A.8 makes confidential certain items related to an investigation, including (1) petitions for immunity, (2) orders granting immunity, (3) transcripts of testimony delivered to witnesses pursuant to grants of immunity, and (4) records, documents, and physical evidence obtained by the prosecuting attorney pursuant to an investigation under the investigative-subpoena statutes; under MCL 767A.5(6), transcripts of witness testimony are only available to a criminal defendant when the charges result from information obtained through investigative subpoenas and (a) the testimony is that of the defendant or (b) the testimony is that of witnesses who will testify at trial.

2. PRETRIAL PROCEDURE — DISCOVERY — GOVERNMENTAL AGENCY DOCUMENTS — DELIBERATIVE-PROCESS PRIVILEGE.

The deliberative-process privilege, which protects certain governmental material, is qualified rather than absolute and can be overcome by a sufficient showing of need, which must be determined on a case-by-case, ad hoc basis in which the court balances the evidentiary need against the harm that could result from disclosure, taking into account such factors as the relevance of the evidence, the availability of other evidence, the seriousness of the case, the role of the government, and the chilling effect on future governmental action.

*Morgan & Meyers, PLC* (by *Courtney E. Morgan, Jr.,* and *Brian J. Nagy*), for Christopher Truel.

*Debra A. Walling,* Corporation Counsel, and *Kimberly M. Craig,* Assistant Corporation Counsel, for the City of Dearborn, Michael Celeski, Joseph Doulette, and Jeffrey Geisinger.

*Kym L. Worthy,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training and Appeals, and *Jason W. Williams,* Assistant Prosecuting Attorney, for the Wayne County Prosecuting Attorney's Office.

Before: CAVANAGH, P.J., and O'CONNELL and WILDER, JJ.

WILDER, J. Appellant Wayne County Prosecutor's Office (WCPO) appeals by delayed leave granted[1] an order granting defendants' motion to compel discovery and requiring the WCPO to "produce its entire file to Defendants' Counsel, including factual and deliberative material." We reverse and remand for further proceedings.

---

[1] *Truel v City of Dearborn,* unpublished order of the Court of Appeals, entered March 2, 2009 (Docket No. 290600).

I

According to the complaint, plaintiff, a Dearborn police officer, was dispatched to Falls Sports Lounge on February 15, 2004, to investigate a report of a bar fight. Plaintiff alleged that, upon arrival, he saw several Dearborn police officers exiting the back door. He further alleged that the chief of police, Michael Celeski, and another Dearborn police officer, Joseph Doulette, were "in the bar area" and "appeared to have just been involved in a fight." Another person was "lying on the floor of the bar covered in blood." Plaintiff learned from a witness that Celeski was one of the people who started the fight and "had been swinging a pool stick during the actual altercation." Plaintiff alleged that Celeski told him that, if he knew what was good for him, he would "end the investigation and 'get the f*** out of here.' " Plaintiff obeyed his commanding officer.

Plaintiff alleged that, following the Fall Sports Lounge incident, he was harassed and ridiculed by other members of the department, including those in command, and he was denied promotions. Plaintiff maintained that he cooperated in investigations regarding this incident by the Dearborn City Council, the Michigan State Police, and the WCPO. A week after plaintiff "answered an investigative subpoena" and testified under oath, plaintiff found himself under investigation for allegedly being a "dirty cop." Plaintiff's doctors subsequently "ordered [him] off work . . . due to depression and anxiety related to post traumatic stress directly stemming" from these incidents as well as an unrelated shooting involving another officer. Plaintiff then sued defendants for violation of the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq.*

As alleged in the complaint, the WCPO and the Michigan State Police conducted an investigation re-

garding "potential misconduct by members of [the Dearborn] police department at the Fall's [sic] Lounge in 2004" and "concluded that there [was] no credible evidence of any illegal activities by members of [the] department." After plaintiff initiated his WPA action, defense counsel requested "the entire investigative file" from the investigation, including "any and all interviews, transcripts, notes, etc." under the Freedom of Information Act (FOIA), MCL 15.231 *et seq.* The WCPO responded to the request, but withheld "statements given by four Dearborn Police Officers pursuant to the investigative subpoenas" and "a final report of the investigation." Corporation counsel then requested by subpoena the information that had been withheld, and the WCPO denied the request, claiming that the materials were "privileged work product" and protected under "the deliberative process privilege," and that transcripts of the statements and records were confidential under MCL 767A.8. Defendants thereafter filed a motion to compel discovery in plaintiff's action, which the trial court granted.

II

At the outset, we note that "the discovery rules and the FOIA represent 'two independent schemes for obtaining information.'" *Central Mich Univ Supervisory-Technical Ass'n MEA/NEA v Central Mich Univ Bd of Trustees*, 223 Mich App 727, 731; 567 NW2d 696 (1997) (HOLBROOK, J., concurring) (citation omitted). Therefore, discovery in a civil action and the FOIA are subject to different procedures and enforcement mechanisms.

Under the FOIA, a person has a right to inspect a public record of a public body upon written request unless the record is exempt from disclosure. MCL 15.233(1). The public body must furnish the person

with a reasonable opportunity to inspect and examine the records. MCL 15.233(3). If a public body denies all or part of a request for a public record, the person requesting the document may either appeal the decision to the head óf the public body or file a civil action in the circuit court to compel the public body to disclose the public record. MCL 15.240(1). This appeal must be decided without reference to FOIA because there is nothing in the record to show that defendants satisfied the requirements of MCL 15.240(1) by appealing the denial if their discovery requests to the head of the WCPO, or by filing a separate FOIA civil action in the circuit court.

However, in this claim under the WPA, as in a civil action generally, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of another party . . . ." MCR 2.302(B)(1). Discovery may be obtained "by any means provided in subchapter 2.300" of the court rules. MCR 2.302(A)(1). Any person may be deposed pursuant to MCR 2.306(A)(1). The deponent may be subpoenaed to appear and may be directed to produce documents or other tangible things. MCR 2.306(B)(1) and (3). A deposition notice and subpoena "may provide that the deposition is solely for producing documents . . . for inspection and copying, and that the party does not intend to examine the deponent." MCR 2.305(A)(3). If the deponent objects, "the party serving the subpoena is not entitled to inspect and copy the materials without an order of the court in which the action is pending." MCR 2.305(B)(2). "The party serving the subpoena may, with notice to the deponent, move for an order compelling production of the designated materials." MCR 2.305(B)(3). Thus, because de-

fendants have disputed the denial of their subpoena requesting the withheld information, a motion to compel was an appropriate means by which to seek its production.

### A. APPLICABILITY OF MCL 767A.8

On appeal, the WCPO argues that the transcripts of statements given by the four police officers cannot be disclosed under the investigative-subpoena statutes. We agree. A trial court's ruling on a discovery motion is reviewed for an abuse of discretion. *Holman v Rasak*, 281 Mich App 507, 508; 761 NW2d 391 (2008). We review de novo issues of privilege, *In re Costs & Attorney Fees*, 250 Mich App 89, 98; 645 NW2d 697 (2002), questions of law, including the interpretation of statutes, *Van Reken v Darden, Neef & Heitsch*, 259 Mich App 454, 456; 674 NW2d 731 (2003), and the construction, interpretation, and application of the court rules, *ISB Sales Co v Dave's Cakes*, 258 Mich App 520, 526; 672 NW2d 181 (2003); *Kernen v Homestead Dev Co*, 252 Mich App 689, 692; 653 NW2d 634 (2002).

The rules of statutory construction require that courts give effect to the Legislature's intent. *Bush v Shabahang*, 484 Mich 156, 166; 772 NW2d 272 (2009). Courts should first look to the specific statutory language to determine the intent of the Legislature, which is presumed to intend the meaning that the statute plainly expresses. *Institute in Basic Life Principles, Inc v Watersmeet Twp (After Remand)*, 217 Mich App 7, 12; 551 NW2d 199 (1996). "If the statutory language is clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written." *Rose Hill Ctr, Inc v Holly Twp*, 224 Mich App 28, 32; 568 NW2d 332 (1997). If reasonable minds could differ regarding the meaning of a statute,

judicial construction is appropriate. *Yaldo v North Pointe Ins Co*, 457 Mich 341, 346; 578 NW2d 274 (1998).

The investigative-subpoena statutes permit the prosecuting attorney to petition the court for an investigative subpoena. MCL 767A.2(1). The petition must identify "each person who will be questioned or who will be required to produce material" and the "records, documents, or physical evidence to be examined," and explain why "the testimony of the person or examination of the records, documents, or physical evidence is relevant to the investigation." MCL 767A.2(2)(b), (c), and (d). If the petition is approved, the subpoena must set forth "[t]he time and place for taking the person's testimony or for the person to produce the required documents or physical evidence" and "describ[e] the records, documents, or physical evidence" to be produced. MCL 767A.4(1)(b) and (e). "A person properly served with an investigative subpoena . . . shall appear before the prosecuting attorney and answer questions concerning the felony being investigated or produce any records, documents, or physical evidence he or she is required to produce." MCL 767A.5(1). The prosecutor may, with court approval, grant immunity to a person "whom the prosecuting attorney intends to require to give testimony concerning" the matter under investigation. MCL 767A.7(1). If a criminal charge is filed against a person as a result of information obtained during the investigation, that person is entitled to a copy of the testimony he provided in response to a subpoena as well as that of every subpoenaed witness who will testify at trial. MCL 767A.5(6).

MCL 767A.8 provides:

> Petitions for immunity, orders of immunity, transcripts of testimony delivered to witnesses pursuant to grants of immunity, and records, documents, and physical evidence

obtained by the prosecuting attorney pursuant to an investigation under this chapter are confidential and shall not be available for public inspection or copying or divulged to any person except as otherwise provided in this chapter. Material and information obtained under this act are exempt from disclosure under the [FOIA].

The plain language of § 8 makes several delineated items related to an investigation confidential, including (1) petitions for immunity, (2) orders granting immunity, (3) "transcripts of testimony delivered to witnesses pursuant to grants of immunity,"[2] and (4) "records, documents, and physical evidence obtained by the prosecuting attorney pursuant to an investigation under this chapter." Given the act's repeated references to testimony or answering questions on the one hand and records, documents, or physical evidence on the other hand, and the fact that one or the other or both may be subpoenaed, MCL 767A.2(2), it appears that testimony is not the same as "records, documents, or physical evidence." The distinction is supported by dictionary definitions, which indicate that "testimony" is a statement or declaration given by a witness under oath, whereas a "document" is a written or printed paper furnishing information or some other written item and a "record" is a written account of facts or events.

---

[2] Why "transcripts of testimony delivered to witnesses pursuant to grants of immunity" should specifically be confidential is not entirely clear because unlike the grand jury act after which it is modeled, Senate Legislative Analysis, SB 85, August 10, 1995, p 4, the investigative subpoena act does not otherwise provide that transcripts of testimony given under a grant of immunity be given to the testifying witness. Cf. MCL 767.19b(3) (a witness who testifies before a grand jury under a grant of immunity is entitled to a transcript of his testimony if he is prosecuted for an offense in violation of the grant of immunity) and MCL 767.19f(3) (transcripts of testimony "delivered to a witness pursuant to his or her grant of immunity" cannot be disclosed to anyone other than "his or her attorney").

*Random House Webster's College Dictionary* (1997), pp
385, 1087, 1330. While a transcript of testimony cer-
tainly could be considered a record or document, given
that it is a written copy of oral testimony, Black's Law
Dictionary (7th ed), p 1503, it is not a record or
document "obtained by the prosecuting attorney pur-
suant to an investigation under this chapter." Rather, a
transcript is a subsequent reduction to writing of testi-
mony "obtained under this act." Defendants argue that
the only transcripts treated as confidential under the
investigative-subpoena statutes are those "of testimony
delivered to witnesses pursuant to grants of immunity."
However, this interpretation does not harmonize and
give effect to §8 and the investigative subpoena statutes
as a whole. *Robinson v City of Lansing*, 486 Mich 1, 15;
782 NW2d 171 (2010); *Bush*, 484 Mich at 167.

The delineated items in § 8 were clearly not intended
to be an all-encompassing expression of the elements of
an investigation that are considered confidential. For
example, the petition for an investigative subpoena
itself is confidential, MCL 767A.2(5), and MCL
767A.5(6) provides for the limited disclosure of testi-
mony to a defendant who has been charged based upon
information obtained pursuant to the investigative-
subpoena statutes. The more likely explanation is that
the delineated items in § 8 were meant to address those
matters not already covered elsewhere in the act. Fur-
ther, it would make little sense in § 8 to specifically
exempt all "[m]aterial and information" obtained dur-
ing the investigation, which would certainly include
witness testimony and transcripts thereof, from disclo-
sure under the FOIA if the same material and informa-
tion were not intended to be confidential under the
investigative-subpoena statutes "except as otherwise
provided in this chapter." We reject an interpretation
that the Legislature intended that transcripts of wit-

ness testimony be available upon request as long as the request is not made under the FOIA.

Because transcripts of witness testimony are only available to a criminal defendant when the charges result from information obtained through investigative subpoenas and (a) the testimony is that of the defendant or (b) the testimony is that of witnesses who will testify at trial, MCL 767A.5(6), defendants here are not entitled to the transcripts of statements given by the four police officers. Therefore, the trial court abused its discretion by granting defendants' motion to compel the WCPO to produce the transcripts.

### B. APPLICABILITY OF THE DELIBERATIVE-PROCESS PRIVILEGE

As we noted earlier in this opinion, parties may obtain discovery of any matter that is relevant and not privileged. MCR 2.302(B)(1). "Privilege is governed by the common law, except as modified by statute or court rule." MRE 501.

In *Ostoin v Waterford Twp Police Dep't*, 189 Mich App 334, 337; 471 NW2d 666 (1991), the Court adopted the deliberative-process privilege recognized under federal law. According to the *Ostoin* Court, "the central question . . . is whether the material sought is factual or evaluative" because "factual material falls outside the scope of the privilege; to be protected, the material must comprise part of the deliberative or evaluative process." *Id.* at 338. Another court described the privilege as follows:

> [I]t allows the government to withhold documents and other materials that would reveal "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." Although this privilege is most commonly encountered in Freedom of Information Act . . . litigation,

it originated as a common law privilege. Two requirements are essential to the deliberative process privilege: the material must be predecisional and it must be deliberative. Both requirements stem from the privilege's "ultimate purpose[, which] . . . is to prevent injury to the quality of agency decisions" by allowing government officials freedom to debate alternative approaches in private. The deliberative process privilege does not shield documents that simply state or explain a decision the government has already made or protect material that is purely factual, unless the material is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations. [*In re Sealed Case*, 326 US App DC 276, 284; 121 F3d 729 (1997) (citations and footnote omitted, last edit in original).][3]

In *NLRB v Sears, Roebuck & Co*, 421 US 132, 152 n 19; 95 S Ct 1504; 44 L Ed 2d 29 (1975), the Supreme Court noted that there is not always a bright line between predecisional documents and postdecisional documents because a document may include both an explanation of a "decision just made," which is postdecisional, and guidelines for future analogous decisions, which is predecisional.

Because the privilege is qualified rather than absolute, it can be overcome by a sufficient showing of need. *Ostoin*, 189 Mich App at 338. "This need determination is to be made flexibly on a case-by-case, ad hoc basis." *In re Sealed Case*, 326 US App DC at 284. The court must balance the evidentiary need against the harm that could result from disclosure, taking into account such factors as the relevance of the evidence, the availability of other evidence, the seriousness of the case, the role of the government, and the chilling effect on future government action. *Id*. at 284-285.

---

[3] Decisions from lower federal courts are not binding but may be considered persuasive. *Walters v Nadell*, 481 Mich 377, 390 n 32; 751 NW2d 431 (2008).

The trial court determined that the WCPO's final report of the investigation was subject to the deliberative-process privilege, but that defendants had overcome the privilege by the showing of need. The trial court declined to review the final report in camera before making its ruling and it is unclear from the record on appeal whether the final report contained deliberative, predecisional information. *NLRB*, 421 US at 152 n 19. However, if defendants wished to contest the trial court's failure to review the final report and the conclusion that it fell within the deliberative-process privilege, defendants should have filed a cross-appeal with this Court. Although an appellee need not file a cross-appeal to argue an alternative basis for affirming the trial court's decision, an appellee cannot obtain a decision more favorable than the decision rendered by the trial court. *Middlebrooks v Wayne Co*, 446 Mich 151, 166 n 41; 521 NW2d 774 (1994); *Turcheck v Amerifund Fin, Inc*, 272 Mich App 341, 350-351; 725 NW2d 684 (2006). Therefore, we shall limit our review to the WCPO's claim on appeal that the trial court abused its discretion when it found that defendants demonstrated a sufficient showing of need to compel production of the final report.

Defendants contend that they need the final report to discover why the WCPO determined "that there is no credible evidence of any illegal activities by members of [the] department," which may have resulted from a finding that "[p]laintiff's report was false and whether the Plaintiff knew that it was false." Defendants further contend that the final report may contain information relevant to plaintiff's credibility about the Falls Sports Lounge incident. As plaintiff counters, however, defendants have misapprehended the nature of the claim against them.

The WPA provides:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action. [MCL 15.362.]

The elements of a cause of action under the WPA are (1) the plaintiff was engaged in a protected activity as defined by the act, (2) the plaintiff was discharged or discriminated against, and (3) a causal connection exists between the protected activity and the discharge or adverse employment action. *West v Gen Motors Corp*, 469 Mich 177, 183-184; 665 NW2d 468 (2003). There are three types of protected activity: "(1) reporting to a public body a violation of a law, regulation, or rule, (2) being about to report such a violation to a public body, or (3) being asked by a public body to participate in an investigation." *Ernsting v Ave Maria College*, 274 Mich App 506, 510; 736 NW2d 574 (2007). The first two types of activity are protected, "unless the employee knows that the report is false." MCL 15.362. In other words, reporting or being about to report violations or suspected violations is protected if the report is or is about to be made in good faith. Truth or falsity is not an element of the third type of protected activity because the employee does not report or anticipate reporting violations or suspected violations but is sought as a source of information by a public body that is investigating violations or suspected violations. *Id.*

The crux of plaintiff's complaint is that he was involved in the third type of protected activity—defendants allegedly discriminated against plaintiff in retaliation for "comply[ing] with the requests of the Mayor of Dearborn, the Michigan State Police and [WCPO] to participate in their respective investigations into the Falls Sports Lounge incident and subsequent cover-up by Defendants." The mere act of participating in the investigations is itself protected activity. *Shaw v Ecorse*, 283 Mich App 1, 11-12; 770 NW2d 31 (2009). Whatever plaintiff may have reported pursuant to the investigation and any evaluation of the truth and credibility of that testimony by the WCPO is irrelevant to a determination whether defendants harassed plaintiff, denied him promotions, and accused him of misconduct because he participated in a public body's investigation. Accordingly, we conclude that the trial court erred in finding that defendants demonstrated a sufficient showing of need for the final report to overcome the deliberative-process privilege and consequently, the trial court abused its discretion by granting defendants' motion to compel the WCPO to produce the report.

We reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.