# STATE OF MICHIGAN

# COURT OF APPEALS

CARL PETERSON,

        Plaintiff-Appellant,

v

CITY OF RIVER ROUGE, SUSAN JOSEPH,
RIVER ROUGE PENSION BOARD, JEFF
BOWDLER, MARK HOGAN, ROBERT
FOLLBAUM, DANNY DOTSON, MARK
PRUNEAU, DENNY CORA, and JOSEPH
MCCARROLL,

        Defendants-Appellees.

UNPUBLISHED
May 11, 2017

No. 329551
Wayne Circuit Court
LC No. 14-011738-CK

Before: TALBOT, C.J., and K. F. KELLY and BORRELLO, JJ.

PER CURIAM.

Plaintiff filed this action against the city of River Rouge (the "City"), its Deputy Clerk Susan Joseph, the River Rouge Pension Board (the "Board"), board members Jeff Bowdler, Mark Hogan, Robert Follbaum, Danny Dotson, Mark Pruneau, Denny Cora, and the Board's legal counsel, Joseph McCarroll, after the Board decided in June 2013 to retroactively convert plaintiff's duty disability pension to a regular retirement pension, effective on his 50th birthday, October 7, 2007. Plaintiff's complaint included claims for breach of contract, superintending control, violation of the Whistleblowers Protection Act ("WPA"), MCL 15.361 *et seq.*, tortious interference and civil conspiracy.[1] On September 16, 2015, the trial court granted defendants' motions for summary disposition and dismissed plaintiff's claims. For the reasons set forth in this opinion, we affirm.

## A. BACKGROUND

Plaintiff was formerly employed by the City as a police officer. In 1994, the City approved plaintiff's duty disability pension. The resolution granting him duty disability

---

[1] Plaintiff also brought a claim under the Michigan Freedom of Information Act, but that claim was dismissed by stipulation and is not at issue on appeal.

-1-

retirement stated that the pension would convert to a reduced regular retirement pension when he reached "voluntary retirement age" pursuant to the collective bargaining agreement ("CBA").[2] The City Charter provides that voluntary retirement age is 55, but the CBA states that a 10-year vested pension becomes payable when the member attains the age of 50. A retirement handbook distributed to members states that a member becomes eligible for retirement at age 50, with 10 years of service. The same handbook states that a duty disability pension converts to a regular retirement pension when the recipient reaches the age of 55. At the time of plaintiff's duty disability retirement, the City's actuary calculated plaintiff's pension payment based on conversion at age 55.

In 2003, plaintiff inquired about the conversion of his pension from duty disability to regular retirement. Defendant McCarroll, the Board's legal counsel, responded that the conversion would take place on plaintiff's 50th birthday. The Board did not thereafter convert plaintiff's pension from duty disability to a regular pension when he reached age of 50 in October 2007. Defendants maintain that this omission was an oversight that came to the Board's attention in 2013. In April 2013, the Board voted against recalculating plaintiff's pension based on conversion at age 50. However, the Board reconsidered and, in June 2013, voted for the retroactive conversion. Plaintiff contends that the retirement handbook states the correct conversion age of 55. He alleges that McCarroll, motivated by personal animus against plaintiff, instigated the Board to deprive him of his right to receive the duty disability pension until the age of 55. McCarroll's alleged animus against plaintiff stems from an incident in 1992 or 1993, when plaintiff made a traffic stop and determined that McCarroll was driving while intoxicated. Plaintiff also alleges that the Board voted to convert his pension at age 50 in retaliation for an incident in 1994, when he informed the mayor that members of the police and fire departments were responsible for the death of an inmate in the city's lockup facility.

Plaintiff filed this lawsuit against defendants. His claims for tortious interference and civil conspiracy apply only to defendants Joseph and McCarroll. He did not specify the defendants for his claims of breach of contract, superintending control, and violation of the WPA.

The City and Joseph filed a joint motion for summary disposition pursuant to MCL 2.116(C)(7) (statute of limitations for the WPA claim and governmental immunity for the tort claims against Joseph), (C)(8), and (C)(10). The City argued that the CBA controlled the issue of voluntary retirement age for purposes of determining the age at which plaintiff's duty disability pension converted to a regular pension, and that the relevant age under the CBA was age 50, notwithstanding conflicting provisions in the City Charter and the retirement handbook. The City therefore argued that plaintiff was not entitled to relief from the Board's decision to recalculate plaintiff's pension based on conversion at age 50, but if he were, the only appropriate relief would be an order of superintending control against the Board, not the City. The City also

---

[2] The parties agree that the CBA for the period July 1, 1991, through June 30, 1994, governs plaintiff's duty disability retirement.

argued that plaintiff's tort claims against Joseph were without merit because Joseph committed no wrongful acts.

The Board, McCarroll, and the individual Board members (collectively the "Board defendants") also jointly moved for summary disposition under MCR 2.116(C)(7), (8), and (10). The Board defendants echoed the arguments asserted by the City and Joseph, and also argued that the Board members were entitled to quasi-judicial governmental immunity. The trial court granted defendants' motions.

Plaintiff moved for imposition of a sanction of default against defendants. Plaintiff contended that some e-mails were not included among the documents produced by defendants in discovery. Plaintiff also requested production of audio recordings of Board meetings. Defendants responded that the audio recordings were not kept after the minutes of the meetings were transcribed and approved, in accordance with guidelines set by the Michigan Municipal League. Plaintiff alleged that defendants destroyed evidence knowing that it would be relevant to the impending litigation. The trial court denied plaintiff's motion. This appeal ensued.

## B. STANDARDS OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo on appeal. *Rusha v Dep't of Corrections*, 307 Mich App 300, 304; 859 NW2d 735 (2014). The trial court dismissed the WPA claim pursuant to MCR 2.116(C)(7). Summary disposition is proper under MCR 2.116(C)(7) when there is no factual dispute and plaintiff's claim is barred by an applicable statute of limitations. *Fane v Detroit Library Comm*, 465 Mich 68, 74; 631 NW2d 678 (2001). As to the remaining claims, the court considered evidence outside the pleadings; therefore, we construe the motions as having been granted pursuant to MCR 2.116(C)(10). *Cuddington v United Health Servs., Inc.*, 298 Mich App 264, 270-271; 826 NW2d 519 (2012). "In reviewing a motion brought under MCR 2.116(C)(10), we review the evidence submitted by the parties in a light most favorable to the nonmoving party to determine whether there is a genuine issue regarding any material fact." *Id.*

## C. ANALYSIS

Plaintiff alleged five distinct claims in his complaint: (1) breach of contract, (2) superintending control, (3) violation of the WPA, (4) tortious interference, (5) civil conspiracy. Plaintiff alleged some claims only against Joseph and McCarroll—i.e. tortious interference and civil conspiracy—but he did not delineate if the other claims applied to specific defendants. We proceed by addressing each claim in turn without delineating whether the claims applied to specific defendants unless otherwise noted.[3]

## I. BREACH OF CONTRACT

---

[3] In his second question presented plaintiff notes that the court erred in granting summary disposition on Count VI as to defendants the Board and McCarroll. However, Count VI was the FOIA claim that the parties stipulated to dismiss.

Plaintiff argues that the trial court erred in granting summary disposition on his breach of contract claim.

Plaintiff advances numerous arguments as to why the Board erred in determining that the voluntary retirement age was age 50. However, resolution of all of plaintiff's arguments turns on whether the City Charter, the CBA, or the retirement handbook controls when plaintiff's duty disability retirement converts to a regular retirement based on the "voluntary retirement age." Clearly, the retirement handbook does not control because it expressly states that the Charter and the CBA "control and govern the rights and benefits under the Retirement System." It further states that if the Charter conflicts with the CBA, the CBA controls. The handbook also contradicts itself with respect to voluntary retirement age. This leaves a conflict between the City Charter, article 11, § 184(t), and the CBA, article XXI, § 2(B)(6).

The city council's resolution approving plaintiff's duty disability retirement provided that his status would be "periodically re-examined . . . until he reaches (a) voluntary retirement age . . . in the applicable collective bargaining agreement which specifies the date he is placed in a regular retirement." It is well settled in Michigan that: "If there is a conflict between PERA [Public Employment Relations Act, MCL 423.201 *et seq*] and another statute, charter provision or constitutional provision affecting mandatory bargaining subjects, the provisions of PERA and Const 1963, art 4, § 48, must dominate . . . ." *AFSCME Council 25 v Wayne Co*, 292 Mich App 68, 86; 811 NW2d 4 (2011). Additionally, "the duty 'to perform in accordance with the terms of a collective bargaining agreement prevails over conflicting (charter) provisions." *Local 1383 Int'l Ass'n of Fire Fighters v City of Warren*, 411 Mich 642, 662; 311 NW2d 702 (1981), quoting *Pontiac Police Officers Ass'n v City of Pontiac (After Remand)*, 397 Mich 674, 677, 685; 246 NW2d 831 (1976).

Under established precedent, where the city charter and CBA conflict with respect to a mandatory subject of bargaining under PERA, the CBA prevails. Retirement benefits are a mandatory subject of bargaining. *Detroit Police Officers Ass'n v City of Detroit*, 391 Mich 44, 63-64; 214 NW2d 803 (1974). Accordingly, the CBA prevails over the City Charter. The charter states that a member receives a duty disability pension until he reaches "voluntary retirement age." Article 11, § 184(t) of the City Charter defines "voluntary retirement age" as age 55 "in the case of a new member" and, "[i]n the case of an original member . . . [as] the age at which he acquires 25 years of credited service, or age 55 years, whichever is the younger age." Article XXI, § 2(B)(6), of the CBA states that the retirement pension is payable "on ten (10) year vesting is payable after age fifty (50) . . . ." Accordingly, voluntary retirement age is 50 years, which is therefore the age at which the duty disability pension converts to a regular retirement pension. Hence, in this matter, plaintiff's pension converted on his 50th birthday, October 7, 2007. The Board's adjustment of plaintiff's pension was therefore supported by the evidence, was not contrary to law, was not arbitrary and capricious, and was not an abuse of discretion. Plaintiff's breach of contract claim therefore failed as a matter of law and summary disposition was proper.

Plaintiff's argument that the City alone determines eligibility for pension benefits is erroneously premised on his position that the City had discretion to determine his eligibility on an ad hoc basis. Plaintiff argues that the actuarial statement, which calculated his duty disability pension based on conversion to a retirement pension at age 55, formed the basis of his contract

with the City. Plaintiff emphasizes that the Michigan Constitution declares that public employee pensions are a matter of contract. Const 1963, art IX, § 24, provides that "[t]he accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby." However, this does not establish that the City had a contractual obligation to set age 55 as the date of converting plaintiff's duty disability pension to a retirement pension. The actuarial statement does not establish a contractual obligation. "A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *AFT Michigan v Michigan*, 497 Mich 197, 235; 866 NW2d 782 (2015) (citations omitted). "Contracts necessarily contain promises: a contract may consist of a mutual exchange of promises . . . or the performance of a service in exchange for a promise." *Id*. at 235-236. *Id*. (citations omitted). The actuarial calculation is not a contract because it does not involve an exchange of promises or an exchange of performance for promise. Plaintiff had no obligations under the actuarial report. Plaintiff's entitlement to pension benefits derived from his employment contract, in which he performed the services of a police officer in exchange for compensation, including retirement benefits, pursuant to the CBA.

Plaintiff also argues that the handbook was written after the CBA was ratified; therefore, the authors of the handbook knew that the CBA set voluntary retirement age at 50. Plaintiff contends that the authors must have understood that the CBA did not change the voluntary retirement age as it pertained to officers who retired on a duty disability pension. However, the handbook advises members to familiarize themselves "with the terms of your collective bargaining agreement which will control in the event of any conflict with the information presented in this handbook." The handbook also advises that the CBA controls if it conflicts with the City Charter. Plaintiff suggests that the correct conversion age is a question of fact for the jury. We disagree because the CBA controls as a matter of law.[4]

Plaintiff argues that the Board did not have authority to make the determination regarding age and retirement. However, as discussed above, the CBA governed the voluntary age of retirement; thus, the Board's discretion was irrelevant. Moreover, authority to apply the terms of the CBA fell within the broad authority delegated to the Board under the City Charter to manage the retirement system.

Similarly, plaintiff's argument that the Board violated its own procedural rules lacks merit. Plaintiff cites Robert's Rules of Order for the rule that "[a]n affirmative vote in the nature of a contract when the party to the contract has been notified of the outcome" is not subject to reconsideration. Plaintiff and the Board were not parties to a contractual relationship. The

---

[4] In a similar argument plaintiff argues that a "Summary Plan Description (SPD)" controls over the actual retirement plan. To the extent that plaintiff argues that the handbook controls over the CBA, this argument is devoid of merit. As discussed above, under PERA, the CBA is controlling. See *AFSCME Council 25*, 292 Mich App at 86. Furthermore, the handbook explicitly states that members should familiarize themselves with the CBA and that the CBA controls if there are any discrepancies.

Board's decision determined plaintiff's contractual pension rights in accordance with the CBA's provision on voluntary retirement age. Robert's Rules of Order does not invalidate the Board's actions, and in any event, the Board's general procedural did not take precedence over the CBA.

In sum, pursuant to established case law, the CBA governed the resolution of when defendant's retirement converted to a standard retirement. The Board did not err in applying the terms of the CBA. Therefore, summary disposition as to plaintiff's breach of contract claim was proper.

## II. SUPERINTENDING CONTROL

Plaintiff argues that the trial court should have granted his claim for a writ of superintending control against the City. This argument fails as a matter of law.

"A superintending control order enforces the superintending control power of a court over lower courts or tribunals." MCR 3.302(A). "If another adequate remedy is available to the party seeking the order, a complaint for superintending control may not be filed." MCR 3.302(B). To invoke a court's power of superintending control, a plaintiff generally must establish both the lack of an adequate legal remedy and the failure of the lower court to perform a clear legal duty. *Recorder's Court Bar Ass'n v Wayne Circuit Court*, 443 Mich 110, 134; 503 NW2d 885 (1993). Here, the City did not have "a clear legal duty" to prevent conversion of plaintiff's pension until he reached age 55. Plaintiff contends that this remedy is appropriate because the City Charter does not confer on the Board the authority to set age and service requirements for retirement pensions or for conversion of duty disability pensions to retirement pensions. As discussed previously, however, these requirements are a mandatory subject of bargaining under PERA, and are therefore settled by the CBA, which sets the voluntary retirement age as 50. Plaintiff has failed to cite any case law which allows this Court to set aside, nullify or ignore the terms and conditions of a valid CBA. Accordingly, the trial court did not err in granting the summary disposition on the claim for superintending control.

## III. WPA

The trial court dismissed plaintiff's WPA claims under MCR 2.116(C)(7), because it was not timely filed within the statutory limitations period under the WPA.

The WPA, MCL 15.362, precludes an employer from taking adverse action against an employee based on the employee's report of a violation of a law or regulation to a public body. "The elements of a cause of action under the WPA are (1) the plaintiff was engaged in a protected activity as defined by the act, (2) the plaintiff was discharged or discriminated against, and (3) a causal connection exists between the protected activity and the discharge or adverse employment action." *Truel v City of Dearborn*, 291 Mich App 125, 138; 804 NW2d 744 (2010). A person claiming violation of the WPA "may bring a civil action for appropriate injunctive relief, or actual damages, or both within 90 days after the occurrence of the alleged violation of this act." MCL 15.363(1).

Here, in addition to failing to articulate the protected activity that he was engaged in the alleged wrongful conduct in this case involved the Board's determination that plaintiff's disability pension converted at age 50, which occurred on November June 20, 2013. Plaintiff

-6-

filed his complaint on September 12, 2014, which was outside the 90-day WPA limitations period. MCL 15.363(1). Moreover, there was insufficient evidence to create a genuine issue of material fact regarding a causal connection between plaintiff's conduct in the early 1990's and the Board's application of the CBA in 2013. Accordingly, the trial court did not err in dismissing plaintiff's WPA claims.

## IV. TORTIOUS INTERFERENCE/CIVIL CONSPIRACY

Plaintiff argues that the trial court erred in granting summary disposition on his tortious interference[5] claim.

"In Michigan, tortious interference with a contract or contractual relations is a cause of action distinct from tortious interference with a business relationship or expectancy." *Health Call of Detroit v Atrium Home & Health Care Servs, Inc*, 268 Mich App 83, 89; 706 NW2d 843 (2005). "The elements of tortious interference with a contract are (1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." *Id*. at 89-90. Moreover, "[t]o maintain a cause of action for tortious interference, the plaintiff must establish that the defendant was a 'third party to the contract rather than an agent of one of the parties acting within the scope of its authority as an agent." *Lawsuit Fin, LLC v Curry*, 261 Mich App 579, 593; 683 NW2d 233 (2004).

In this case, plaintiff's tortious interference claim failed. As discussed above, plaintiff's rights to pension benefits was governed by the CBA and under the terms of the CBA, plaintiff's duty disability retirement converted at age 50. Accordingly, there was no evidence to show breach of contract and plaintiff's tortious interference claims failed as a matter of law. *Health Call of Detroit*, 268 Mich App at 89. Moreover, none of the named defendants were third parties, but instead were agents of the City. Accordingly, the tortious interference claims failed for this reason as well. See *Curry*, 261 Mich App at 593.

Similarly, plaintiff's civil conspiracy claims failed as a matter of law. "A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Admiral Ins Co v Columbia Cas Ins Co*, 194 Mich App 300, 313; 486 NW2d 351 (1992). If a plaintiff fails to establish any tortious conduct, the plaintiff's conspiracy action must also fail. *Id*. In this case, there was no evidence to support that any of the named defendants engaged in unlawful or tortious conduct given that the Board's decision was grounded in the terms of the CBA. Accordingly, plaintiff's civil conspiracy claims failed as a matter of law.

---

[5] Plaintiff did not distinguish whether his claim was for tortious interference with a contract or with a business relationship; however, because he did not have a business relationship with any of the parties we address it as a contractual claim. Even if plaintiff did allege a business relationship claim, that claim would fail where there was no evidence that any defendant committed a per se wrongful or unlawful act with the purpose of interfering in the business relationship of another. See *Health Call of Detroit v Atrium Home & Health Care Servs, Inc*, 268 Mich App 83, 89; 706 NW2d 843 (2005).

In sum, the CBA governed in this case and the CBA provided that the voluntary retirement age was 50. Accordingly, all of plaintiff's substantive claims failed as a matter of law and we need not address plaintiff's ancillary arguments that the trial court erred in determining the scope of the review of the Board's decision, that the Board is not a real party in interest, and that governmental immunity does not apply to bar some of his claims.

V. SANCTIONS

Plaintiff argues that the trial court erred in denying his motion for entry of a default against defendants as a sanction for destroying evidence. The trial court's decision on a motion to sanction a party for spoliation of evidence is reviewed for an abuse of discretion. *Brenner v Kolk*, 226 Mich App 149, 160-161; 573 NW2d 65 (1997).

"A trial court has the authority, derived from its inherent powers, to sanction a party for failing to preserve evidence that it knows or should know is relevant before litigation is commenced." *Bloemendaal v Town & Country Sports Ctr, Inc*, 255 Mich App 207, 211; 659 NW2d 684 (2002). "Even when an action had not been commenced and there is only a potential for litigation, the litigant is under a duty to preserve evidence that it knows or reasonably should know is relevant to the action." *Id*. at 212 (citation and quotation marks omitted). When determining an appropriate sanction, the trial court must tailor the sanction to the misconduct. *Brenner*, 226 Mich App at 163-164. A "trial court properly exercises its discretion when it carefully fashions a sanction that denies the party the fruits of the party's misconduct, but that does not interfere with the party's right to produce other relevant evidence." *Bloemendaal*, 255 Mich App at 212. Sanctions may include dismissal of the action (for extreme cases), "exclusion of evidence that unfairly prejudices the other party[,] or an instruction to the jury that it may draw an inference adverse to the culpable party from the absence of the evidence." *Brenner*, 226 Mich App at 161. Default is analogous to dismissal where the plaintiff seeks a sanction against the defendant.

Plaintiff alleged that defendants deliberately destroyed evidence despite knowing that plaintiff intended to initiate litigation. Plaintiff identified audio recordings of meetings, e-mails between Joseph and Comerica dated March 13 and March 14, and other e-mails that might have come within plaintiff's discovery request. Plaintiff emphasizes that his counsel put Joseph on notice of impending litigation in an e-mail sent on January 17, 2014. However, the audio recordings of the April, May, and June 2013 Board meetings were discarded, respectively, in May, June, and July 2013, before Joseph received the e-mail warning. Plaintiff identified three e-mails omitted from defendants' discovery production, but there is no basis for inferring that this represents a deliberate effort to conceal evidence rather than an inadvertent oversight. There is no explanation regarding the disposition of the Board members' written notes, but there is no basis for inferring that they were deliberately suppressed. Accordingly, there is no evidentiary support for plaintiff's accusation that defendants engaged in egregious misconduct.

The allegedly lost evidence is related to plaintiff's allegations that defendants violated his pension rights at the instigation of McCarroll, Joseph, and other persons acting with vindictive motives. As previously discussed, however, defendants' recalculation of plaintiff's pension was based on the terms of the CBA. This was not a discretionary decision potentially affected by individuals' subjective opinions of plaintiff. Accordingly, the content of the recordings, notes,

and e-mails could not have helped plaintiff obtain a more favorable outcome. Under these circumstances, neither default, nor a less severe sanction, was appropriate. Therefore, the trial court did not abuse its discretion in denying plaintiff's motion for a sanction of default.

Affirmed. No costs awarded. MCR 2.719(A).

/s/ Michael J. Talbot
/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello