*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RAMON CATRELL LOGAN II,

        Defendant-Appellant.

UNPUBLISHED
January 14, 2021

No. 345014
Kent Circuit Court
LC No. 17-011526-FC

Before: SAWYER, P.J., and MARKEY and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of second-degree murder, MCL 750.317, and felony firearm, MCL 750.227b.[1] He was sentenced to 38 years to 100 years for the murder conviction, and two years for the firearm conviction. We affirm defendant's convictions and sentence for felony firearm, but vacate defendant's sentence for second-degree murder and remand for trial court to articulate its reasons for the extent of the sentencing departure or resentence the defendant.

## I. BACKGROUND

This case arises from the fatal shooting of Keith Kirkwood on August 22, 2016 at 1645 College Avenue. In the College Avenue incident, defendant, then 17-years-old, and codefendant Mikey Davis,[2] then 15-years-old, approached Kirkwood and his cousin Ricky Johnson, and asked if they wanted to purchase a bike. Johnson and Kirkwood were drinking beer. Johnson tried to get defendant and Davis to leave the bike there and return the next day for the money. This offer upset defendant and Davis who thought Johnson and Kirkwood were treating them like naïve children. After Johnson pulled $25 out of his wallet, defendant and Davis both drew guns, and one of them announced that this was now a robbery. Davis pistol whipped Kirkwood and

---

[1] Defendant was acquitted of the charges of felony murder, MCL 750.316, and armed robbery, MCL 750.529.

[2] Davis is not a party to this appeal.

-1-

defendant hit Johnson in the mouth with the butt of a gun. After Kirkwood repeatedly told defendant and Davis that there was no money, Davis and defendant shot Kirkwood multiple times. Kirkwood later died from his gunshot wounds.

Evidence was introduced at trial regarding defendant's involvement in a second bike related shooting two days later on August 24, 2016. This occurred on Dorchester Street and resulted in shots fired with no injuries. The testimony was that defendant went to the home of some young boys to either retrieve a bicycle that was taken from a younger child or to confront the boys about being rude to a younger child. Defendant and the boys argued over the bike. Defendant displayed a gun in his waistband and left with the bike. The boys followed and shots were later heard from their direction. It was after this second incident that officers executed a search warrant at the home defendant lived at with his mother and found a gun and cartridges hidden in a backpack in their backyard shed. Analysis of the gun recovered from the home showed that it fired the bullets recovered from the scenes of both College Avenue and Dorchester. Defendant's DNA was found on the gun and on the other items found in the backpack.

Defendant's cousins, his codefendant's father, his girlfriend, and two confidential informants testified that defendant told them that he killed Kirkwood. The cousins and codefendant's father who were incarcerated at the time of trial, as well as the confidential informants who were in jail, received plea bargains in exchange for their testimony. There was testimony that defendant also confessed to his mother, but she did not testify against him. Defendant was charged with felony murder and armed robbery, but acquitted of those charges, and found guilty of the lesser offense of second-degree murder and the additional charge of felony firearm.

## II. DISCOVERY

Defendant argues the trial court abused its discretion in denying defendant's motion to compel the prosecutor to disclose the transcript or recording of Michael (Mikey) Davis's testimony under investigative subpoena. Defendant also argues in his Standard 4 Brief, that the prosecutor's withholding evidence of Davis's investigative subpoena denied defendant his right to discovery, due process, confrontation and a fair trial. While we find that the trial court abused its discretion in denying defendant Davis's investigative subpoena testimony and that plaintiff purposely suppressed the evidence, defendant is not entitled to relief where he fails to prove that he was prejudiced by the discovery violation and that the investigative subpoena constituted *Brady*[3] material.

### A. STANDARD OF REVIEW

We review a trial court's decision regarding a motion for discovery for an abuse of discretion. *People v Phillips*, 468 Mich 583, 587; 663 NW2d 463 (2003). "The trial court abuses its discretion when its decision falls outside the range of principled outcomes . . . ." *People v Lane*, 308 Mich App 38, 51; 862 NW2d 446 (2014).

---

[3] *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

Unpreserved claims of evidentiary error are reviewed for plain error affecting the defendant's substantial rights, meaning that the error was outcome determinative. *People v Coy*, 258 Mich App 1, 12; 669 NW2d 831 (2003).

" 'Interpretation of a court rule is a question of law that this Court reviews de novo.' " *People v Buie*, 285 Mich App 401, 416; 775 NW2d 817 (2009), quoting *Wilcoxon v Wayne Co Neighborhood Legal Services*, 252 Mich App 549, 553; 652 NW2d 851 (2002).

B. ANALYSIS

Criminal discovery is governed by MCR 6.201. Defendant requested Davis's investigative subpoena testimony under MCR 6.201(B)(3) which provides:

> (B) Discovery of Information Known to the Prosecuting Attorney. Upon request, the prosecuting attorney must provide each defendant:
>
> * * *
>
> (3) any written or recorded statements, including electronically recorded statements, by a defendant, codefendant, or accomplice pertaining to the case, even if that person is not a prospective witness at trial;

Plaintiff argued that discovery of Davis's investigative subpoena testimony was prohibited under MCR 6.201(C)(1):

> (C) Prohibited Discovery.
>
> (1) Notwithstanding any other provision of this rule, there is no right to discover information or evidence that is protected from disclosure by constitution, *statute*, or privilege, including information or evidence protected by a defendant's right against self-incrimination, except as provided in subrule (2)[4]. . . .[Emphasis added].

Plaintiff claimed disclosure was protected by MCL 767A.5(6), which provides in relevant part, that if a criminal charge is filed by the prosecuting attorney based on information obtained pursuant to an investigative subpoena, the trial judge

> . . .may direct the prosecuting attorney to furnish to the defendant the testimony any witness who will testify at the trial gave the prosecuting attorney pursuant to this chapter regarding that crime except those portions that are irrelevant or immaterial, or that are excluded for other good cause shown. If the defendant requests the testimony of a witness pursuant to this section and the trial judge directs the

---

[4] Subrule (2) states in part, that "[i]f a defendant demonstrates a good-faith belief, grounded in articulable fact, that there is a reasonable probability that records protected by privilege are likely to contain material information necessary to the defense, the trial court shall conduct an in camera inspection of the records."

prosecuting attorney to furnish to the defendant a copy of that witness's testimony, the prosecuting attorney shall furnish a copy of the testimony not later than 14 days before trial. If the prosecuting attorney fails or refuses to furnish a copy of the testimony to the defendant pursuant to this subsection, the prosecuting attorney may be barred from calling that witness to testify at the defendant's trial.

Plaintiff also relied on MCL 767A.8, which states:

Petitions for immunity, orders of immunity, transcripts of testimony delivered to witnesses pursuant to grants of immunity, and records, documents, and physical evidence obtained by the prosecuting attorney pursuant to an investigation under this chapter are confidential and shall not be available for public inspection or copying or divulged to any person except as otherwise provided in this chapter. Material and information obtained under this act are exempt from disclosure under the freedom of information act, Act No. 442 of the Public Acts of 1976, being sections 15.231 to 15.246 of the Michigan Compiled Laws.

"[T]he goal of judicial interpretation of a statute is to ascertain and give effect to the intent of the Legislature." *People v Pasha*, 466 Mich 378, 382; 645 NW2d 275 (2002). "To ascertain that intent, this Court begins with the statute's language." *People v Stone*, 463 Mich 558, 562; 621 NW2d 702 (2001). "If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning and we enforce the statute as written." *People v Weeder*, 469 Mich 493, 497; 674 NW2d 372 (2004). The same is true when interpreting the language in court rules. *People v Strong*, 213 Mich App 107, 111; 539 NW2d 736 (1995). "When construing statutes that are in pari materia, our goal is to further legislative intent by finding an harmonious construction of the related statutes, so that the statutes work together compatibly to realize that legislative purpose." *People v Izarraras-Placante*, 246 Mich App 490, 498; 633 NW2d 18 (2001). In other words, "if two statutes lend themselves to a construction that avoids conflict, then that construction should control." *Id*. "In resolving a conflict between a statute and a court rule, the court rule prevails if it governs practice and procedure." *Strong*, 213 Mich App at 112 citing Const 1963, art 6, sec 5; MCR 1.104.

Plaintiff's reliance on *Truel v City of Dearborn*, 291 Mich App 125, 135; 804 NW2d 744 (2010), to argue that MCL 767A.5(6) prohibits disclosure of Davis's investigative subpoena testimony is misplaced. In *Truel*, the defendants, City of Dearborn, sought the investigative subpoena statements of four officers from the Wayne County Prosecutor's Office (WCPO) after the plaintiff, a Dearborn police officer, sued the defendants for violation of the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq*. The WCPO refused to turn over the requested materials because they were "privileged work product," protected under "the deliberative process privilege" and where the "transcripts of the statements and records were confidential under MCL 767A.8." *Truel*, 291 Mich App at 129. The defendant filed a motion to compel that was granted. The WCPO appealed by delayed leave granted and this Court reversed. In regard to MCL 767A.8, this Court held,

Because transcripts of witness testimony are only available to a criminal defendant when the charges result from information obtained through investigative subpoenas and (a) the testimony is that of the defendant or (b) the testimony is that of witnesses

who will testify at trial, MCL 767A.5(6), defendants here are not entitled to the transcripts of statements given by the four police officers. [*Id*. at 135].

Concerning disclosure under the deliberate process privilege, this Court noted that "[b]ecause the privilege is qualified rather than absolute, it can be overcome by a sufficient showing of need." *Id*. at 136. It held that the trial court erred in finding that defendant made a sufficient showing of need where, "[w]hatever plaintiff may have reported pursuant to the investigation and any evaluation of the truth and credibility of that testimony by the WCPO is irrelevant to a determination whether defendants harassed plaintiff, denied him promotions, and accused him of misconduct because he participated in a public body's investigation." *Id*. at 139.

In its interpretation of MCL 767A.5, the Court in *Truel* did not hold that the defendants were not entitled to the transcripts of the four officers because the officers would not be called to testify in plaintiff's WPA action against defendants. The Court's holding under MCL 767A.8 was that the transcripts of witness testimony were only available to a *criminal defendant* when "(a) the testimony is that of the defendant or (b) the testimony is that of witnesses who will testify at trial."[5] Notably, MCR 6.201 was not implicated because *Truel* involved a civil matter.

We find *People v Pruitt*, 229 Mich App 82; 580 NW2d 462 (1998), to be more on point. In *Pruitt*, the issue was "whether a district court, before the preliminary examination of an individual charged with a felony, possesses the authority to compel discovery of witnesses' statements given to the prosecution pursuant to an investigative subpoena." *Id*. at 83-84. There, the "defendant, who was charged with a felony, filed a motion for discovery in the district court after his district court arraignment but before his preliminary examination." *Id*. at 86. Among other items, "defendant sought in the district court copies of the statements given by himself and by five other individuals pursuant to investigatory subpoenas." *Id*. at 91. "The circuit court vacated the order, ruling that the district court lacked authority to grant defendant's motion" because the circuit court read "trial judge" in MCL 767A.5(6) as only meaning "circuit judge." *Id*. at 86. This Court held that,

> [t]he trial court in this felony case erred in concluding that the district court lacked the authority to order any discovery of information obtained by the prosecutor through the use of investigative subpoenas. The criminal discovery procedures of MCR 6.201 supersede the statutory procedures in both the district court and the circuit court; the court rule mandates that, at any stage of the proceedings, the

---

[5] Only two of 39 cases that cite *Truel*, reference the case for its holding regarding MCL 767A.8. *People v Cotton*, unpublished per curiam opinion of the Court of Appeals, issued December 19, 2013 (Docket No. 311956), used the Court's reasoning in *Truel* concerning MCL 767A.8 to hold that a petition for an investigative subpoena was confidential and not discoverable under MCL 767A.2(5). *Moody v Michigan Gaming Control Bd*, unpublished opinion of the United States District Court for the Eastern District of Michigan, issued June 18, 2013 (Case No. 12-cv-13593) cited *Truel* for the plain interpretation of MCR 6.201, that "[t]ranscripts of investigative subpoenas are only available to a criminal defendant when the state proceeds with criminal charges on 'information obtained through investigative subpoenas,' among other requirements."

prosecution must turn over exculpatory information and the statements of a defendant, codefendant, or accomplice within seven days[6] of a request. [*Id.* at 88].

The Court ruled that "in felony cases, a district court has the authority to order the production of statements made by a defendant, codefendant, or accomplice in response to an investigative subpoena, along with any exculpatory information obtained from any witness in response to an investigative subpoena[.]" *Id.* at 84.

The Court distinguished the discovery procedure in the district court when the defendant is charged with a misdemeanor:

> If, on the other hand, the "criminal charge" filed by the prosecution is, for some reason, a misdemeanor charge rather than the felony originally under investigation, the trial would be in the district court. In that instance, the discovery provisions of MCR 6.201 would have no application, MRE 6.001(B), and the "trial judge" would be a district judge. In the absence of MRE 6.201, the provisions of M.C.L. § 767A.5(6); M.S.A. § 28.1023A(5)(6) would be triggered, and, therefore, misdemeanor defendants would have twenty-one days after their district court arraignment in which to seek from the district judge an order for the discovery of statements made pursuant to an investigative subpoena by themselves or any other witness who will testify at the trial. [*Id.* at 90].

The *Pruitt* Court explained that "[o]ne of the purposes behind the Legislature's enactment of [MCL 767A.5(6),] 1995 P.A. 148, for example, was to force reluctant individuals not necessarily involved in the crime being investigated to cooperate in the investigation." *Id.* 88-89 citing Senate Analysis, SB 85, August 10, 1995. The Court determined that, "[n]onexculpatory statements made by these individuals, that is, persons who are *not* 'defendant[s], codefendant[s], or accomplice[s],' are not subject to mandatory discovery under MCR 6.201, but are subject to discovery under M.C.L. § 767A.5(6)[.]" *Id.* at 89 (emphasis added). Thus, the Court concluded

> [t]o the extent that M.C.L. § 767A.5(6); M.S.A. § 28.1023A(5)(6) allows a felony defendant to seek copies of statements given pursuant to an investigative subpoena only during a twenty-one-day period, limits discovery to the statements of the defendant and, in the discretion of the court, "any witness who will testify at trial," allows a prosecutor to forestall disclosure of the statements until fourteen days before trial, and does not require the prosecutor to turn over other exculpatory information, the statute is in direct conflict with MCR 6.201(B)(1), (B)(3), and (F), and, under MCR 6.001(E), is superseded by the court rule. [*Id.* at 88].

Applying the foregoing rules, statutes, and caselaw we conclude that the trial court abused its discretion in refusing defendant disclosure of Davis's investigative subpoena testimony. MCR 6.201(B)(3)'s grant of discovery to a defendant in a felony matter is broad and allows disclosure

---

[6] The current version of MCR 6.201 states that "the prosecuting attorney must comply with the requirements of this rule within 21 days of a request under this rule and a defendant must comply with the requirements of this rule within 21 days of a request under this rule." MCR 6.201(F).

of "*any* statements, including electronically recorded statements," and particular, in that the statements be "by a defendant, codefendant, or accomplice pertaining to the case." While MCR 6.201(B)(3) does not specifically include or exclude evidence obtained from investigative subpoenas. However, if the investigative subpoena procedure results in a statement from the defendant, codefendant, or an accomplice pertaining to the case, MCR 6.201(B)(3) applies. See e.g. MCR 767A.9 ("A person who makes a false statement under oath in an examination conducted under this chapter knowing the statement is false is guilty of perjury . . ."). MCR 6.201(B)(3) also mandates disclosure of any statements from the defendant, codefendant, or an accomplice whether the defendant, codefendant, or accomplice is expected to testify at trial or not.

MCR 6.201(C)(1), as relevant to this case, prohibits the discovery of evidence that is protected from disclosure by statute. Its language begins with "[n]otwithstanding any other court rule," so in spite of any other court rule that would allow disclosure, discovery of the same evidence is otherwise prohibited under MCR 6.201(C)(1) if a statute provides that it is protected from disclosure. Again, plaintiff relies on MCL 767A.5(6) and MCL 767A.8 to argue that Davis's investigative subpoena testimony is prohibited from disclosure by statute. Neither statute however, absolutely prohibits disclosure. Nor does either statute specifically prohibit investigative subpoena testimony by a defendant, codefendant, or an accomplice. Importantly, MCL 767A.5(6) only concerns discovery of the investigative subpoena testimony of witnesses who will testify at trial. Even then, the discovery of this testimony is not prohibited. Rather, MCL 767A.5(6) gives 1) the trial court the discretion to order investigative subpoena testimony of witnesses who will testify at trial to be furnished to the defendant, 2) the prosecutor the authority to refuse to furnish that testimony, and 3) a consequence to the prosecutor for refusing to obey the court's order of disclosure. MCL 767A.8 states that "evidence obtained by the prosecuting attorney pursuant to an investigation under this chapter are confidential and shall not be available for public inspection or copying or divulged to any person *except as otherwise provided in this chapter*." "[E]vidence obtained by the prosecuting attorney pursuant to an investigation under this chapter" would plainly include investigative subpoena testimony. However, the emphasized language "*except as otherwise provided in this chapter*" leads the reader back to MCL 767A.5(6) which does allow for evidence obtained pursuant to an investigative subpoena to be disclosed when ordered by the court.

To the extent that the trial court interpreted MCL 767A.5(6) as to deprive the defendant here of the investigative subpoena testimony of "a defendant, codefendant, or accomplice," the court made an error of law. In accord with *Pruitt*, 229 Mich App at 87-88, "[t]he Michigan court rules governing criminal procedure supersede any statutory procedure pertaining to and inconsistent with a procedure provided by a court rule." Further, the plaintiff was incorrect in its argument that MCL 767A.5(6) and MCL 767A.8 prohibited disclosure where the statutes specifically allow for the disclosure of nonexculpatory statements in the trial court's discretion and as otherwise provided elsewhere in MCL 767A.1 *et seq*.

Despite the error of law made by the trial court, reversal is not automatic.

No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of

the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice. [MCR 769.26].

"[T]he defendant has the burden to demonstrate that a preserved, nonconstitutional error resulted in a miscarriage of justice." *People v Hawthorne*, 474 Mich 174, 181; 713 NW2d 724 (2006).[7] The error only warrants reversal when it is more probable than not that the error was outcome determinative. *People v Lukity*, 460 Mich 484, 494-495; 596 NW2d 607 (1999). Defendant fails to argue in his attorney brief, that the error was outcome determinative in relation to whether the trial court abused its discretion. In his Standard 4 Brief, defendant argues that the investigative subpoena was needed to determine whether to call Davis as a witness, for impeachment purposes, for trial preparation, and strategy. Still, defendant does not explain in relation to whether the trial court abused its discretion how the absence of Davis's testimony constituted a miscarriage of justice. Had Davis been called as a witness, he was likely to invoke his Fifth Amendment right against self-incrimination because he was implicated in the offenses with defendant. Also, any argument that Davis would have provided information that was helpful to the defense is speculative.

Defendant also argues in his attorney and Standard 4 Briefs that "it is possible that this evidence could constitute *Brady* material."

Under *Brady v Maryland*, 373 US 83, "[a] criminal defendant has a due process right of access to certain information possessed by the prosecution." *People v Lester*, 232 Mich App 262, 281; 591 NW2d 267 (1998). "This due process requirement of disclosure applies to evidence that might lead a jury to entertain a reasonable doubt about a defendant's guilt." *Id*. at 281. To prove a Brady violation, the defendant must show that (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) viewed in its totality, the evidence is material. *People v Chenault*, 495 Mich 142, 155; 845 NW2d 731 (2014). "Evidence is favorable to the defense when it is either exculpatory or impeaching." *Id*. at 150. "Exculpatory evidence" is "[e]vidence tending to establish a criminal defendant's innocence." Black's Law Dictionary (9th ed), p 637. "Impeachment evidence as well as exculpatory evidence falls within the Brady rule because, if disclosed and used effectively, such evidence 'may make the difference between conviction and acquittal.' " *Lester*, 232 Mich App at 281 (citation omitted). To establish materiality, a defendant must show that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Chenault*, 495 Mich at 150.

While plaintiff clearly suppressed the investigative subpoena evidence when it refused on the record to produce it based on MCL 767A.5(6), defendant's *Brady* claim ultimately fails for lack of being able to prove that the evidence was favorable or material. In his attorney brief, defendant merely argues that "it is possible that this evidence could constitute *Brady* material." In his Standard 4 Brief, defendant argues that, "Above all, if the jury would have known what [Davis] said and known that it's a high probability that he committed this crime, the defendant would have

[7] A defendant has no constitutional right to discovery in criminal cases. *People v Elston*, 462 Mich 751, 758; 614 NW2d 595 (2000).

a high chance of being acquitted." Essentially, defendant's *Brady* claim rests on Davis admitting at the investigative subpoena or at trial that he committed the offenses and defendant did not. This was very unlikely. The fact that the plaintiff offered defendant a plea deal that included testifying against Davis illustrates that Davis had yet to confess to the charges. Further, because Davis was implicated in the commission of the offenses with the defendant, he was likely to invoke his Fifth Amendment rights if called to testify at defendant's trial. Defendant's *Brady* claim is otherwise based on speculation.

## III. EVIDENTIARY ERROR

Defendant argues that: (1) the trial court erred in admitting evidence of another shooting under MRE 404(b) and (2) he is entitled to a new trial due to the erroneous admission of his recorded statements to an informant.

## A. STANDARD OF REVIEW

"The decision whether to admit evidence falls within a trial court's discretion and will be reversed only when there is an abuse of that discretion." *People v Duncan*, 494 Mich 713, 722; 835 NW2d 399 (2013), citing *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). "The trial court abuses its discretion when its decision falls outside the range of principled outcomes . . . ." *People v Lane*, 308 Mich App 38, 51; 862 NW2d 446 (2014). "[W]here decisions regarding the admission of evidence involve preliminary questions of law such as whether a rule of evidence or statute precludes admissibility, our review is de novo." *People v Layher*, 464 Mich 756, 761; 631 NW2d 281 (2001). "A preserved trial error in admitting or excluding evidence is not grounds for reversal unless, after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative." *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012).

"This Court reviews for clear error findings of fact regarding a motion to suppress evidence. However, we review de novo the trial court's ultimate decision on a motion to suppress." *People v Fosnaugh*, 248 Mich App 444, 450; 639 NW2d 587 (2001). "Generally, whether a defendant's right to counsel was violated is a constitutional issue that this Court reviews de novo." *People v Hieu Van Hoang*, 328 Mich App 45, 54-55; 935 N W2d 396 (2019).

## B. ANALYSIS

## 1. MRE 404(B)

Defendant argues that evidence of the Dorchester incident was irrelevant, inadmissible and unfairly prejudicial.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court. Evidence which is not relevant is not admissible." MRE 402. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading

the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. MRE 403. See *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 mod 450 Mich 1212; 539 NW2d 504 (1995) (citation omitted) ("Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403[.]).

Generally, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." MRE 404(b)(1). However, evidence of other crimes, wrongs, or acts may be admissible for other purposes, including

> . . .proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case. [MRE 404(b)(1)].

The Dorchester incident was relevant to the defendant's possession of a weapon within days of the instant offense and provided context for his eventual arrest. The Dorchester incident occurred on August 24, 2016, two days after the College incident and also involved the defendant arguing over a bike, this time with two children, aged 13 and 16. The argument became heated when the children refused to turn over the bike and according to Jackson, who was a classmate of defendant's and the cousin of the 13 and 16-year-olds, defendant lifted up his shirt and brandished a firearm in his waistband. Defendant eventually left on foot with the bike, but the children followed defendant. Jackson's mother, Belser, tried to catch up with them, but was unsuccessful. Gun shots were heard from the direction where defendant and the children had walked. Defendant's next door neighbor, Bacon, heard the gun shots while standing outside smoking a cigarette. Twenty or thirty minutes later he saw the defendant walking across their shared driveway with no shirt on. Bacon testified that he refused a pink and brown bag that defendant tried to give to him and saw the defendant put the same bag in defendant's backyard shed. Melville was asleep in the house when defendant and his mother woke him saying that defendant had just shot at someone. Melville saw the gun in defendant's hand, witnessed defendant wipe it down with a t-shirt, place it in a backpack, and take the backpack outside to their backyard shed. Sergeant Postma found the backpack with a 9-millimeter Glock pistol, cartridges, and clothing inside during the execution of a search warrant at defendant's Liberty Street home. Crime scene technician Curtiss collected five 9-millimeter shell casings at the scene of the College murder. Crime scene technician Grant collected seven spent shell casings laying in the roadway on Dorchester. Prosecution ballistics expert Crump opined that shell casings found at the College murder scene and Dorchester shooting scene were from the same Glock firearm that was seized from defendant's backyard shed.

"Evidence of a defendant's possession of a weapon of the kind used in the offense with which he is charged is routinely determined by courts to be direct, relevant evidence of his commission of that offense." *People v Hall*, 433 Mich 573, 580–581; 447 NW2d 580 (1989). In both of the incidents, defendant used a Glock 26, 9-millimeter gun. Evidence of the Dorchester incident involving defendant was relevant to establish defendant's connection to the handgun, thereby connecting him to the instant offenses. See *People v Murphy (On Remand)*, 282 Mich App 571, 580; 766 NW2d 303 (2009) ("the appropriate test is not whether sufficient evidence existed to convict defendant of constructively possessing the [ ]gun, but whether the circumstances

surrounding the gun's discovery tended to establish defendant's connection to it."). Evidence of the Dorchester incident also tended to prove defendant's identity as one of Kirkwood's assailants by showing his connection to a firearm used in both incidents. See *Hall*, 433 Mich at 580–581. Identity is a proper purpose to admit evidence of other crimes, wrongs, or acts under MRE 404(b)(1).

Furthermore, the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice under MRE 403. Danger of unfair prejudice exists when "marginally probative evidence will be given undue or preemptive weight by the jury." *People v Feezel*, 486 Mich 184, 198; 783 NW2d 67 (2010) (quotation marks and citation omitted). "Unfair prejudice" does not mean "damaging." *Bradbury v Ford Motor Co*, 123 Mich App 179, 185; 333 NW2d 214 (1983). Here, the evidence of the prior incident was highly probative to prove defendant's identity as one of the perpetrators of the crimes at issue. Further, the jury was instructed to consider the evidence for the limited purpose of whether it showed one of the proper purposes under MRE 404(b)(1), i.e., proof of motive, opportunity, intent, preparation, scheme, plan, system of doing an act, knowledge, identity, or absence of mistake, or accident. "Jurors are presumed to follow the court's instructions, and instructions are presumed to cure most errors." *People v Mullins*, 322 Mich App 151, 173; 911 NW2d 201 (2017). Hence, the trial court did not abuse its discretion in denying defendant's motion in limine to exclude the Dorchester evidence.

## 2. RECORDED STATEMENTS

Defendant first argues that admission of the wire recorded conversation between himself and informant Jacob Blett at trial violated his Fifth Amendment rights against self-incrimination when he was not given his *Miranda*[8] rights prior to the police sending Blett into his cell with a wire. Defendant essentially contends that, although he was 19-years-old at the time his conversation with Blett was recorded, he should have been afforded the protections of a minor during custodial interrogation. We disagree.

"In *Miranda*, the United States Supreme Court held that the Fifth Amendment's prohibition against compelled self-incrimination requires that the accused be given a series of warnings before being subjected to 'custodial interrogation.' " *People v Elliott*, 494 Mich 292, 301; 833 NW2d 284 (2013) (citation omitted). *Miranda* defined "custodial interrogation" as "questioning initiated by **law enforcement** officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 US at 444 (emphasis added). "That atmosphere is said to generate 'inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely.' " *Illinois v Perkins*, 496 US 292, 296; 110 S Ct 2394; 110 L Ed 2d 243 (1990) quoting *Miranda*, 384 US at 467. "[I]mprisonment alone is not enough to create a custodial situation within the meaning of *Miranda*." *Howes v Fields*, 565 US 499, 511; 132 S Ct 1181, 1184; 182 L Ed 2d 17 (2012). Whether "incarceration constitutes custody for *Miranda* purposes ... depends upon whether it exerts the coercive pressure that *Miranda* was designed to guard against—the 'danger of coercion [that] results from the *interaction* of custody and official interrogation.' " *Maryland v*

---

[8]*Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

*Shatzer*, 559 US 98, 112; 130 S Ct 1213; 175 L Ed 2d 1045 (2010) quoting *Perkins*, 496 US at 297.[9] "Conversations between suspects and undercover agents do not implicate the concerns underlying *Miranda*." *Perkins*, 496 US at 296. The Court reasoned:

> The essential ingredients of a "police-dominated atmosphere" and compulsion are not present when an incarcerated person speaks freely to someone whom he believes to be a fellow inmate. Coercion is determined from the perspective of the suspect. When a suspect considers himself in the company of cellmates and not officers, the coercive atmosphere is lacking. . . .There is no empirical basis for the assumption that a suspect speaking to those whom he assumes are not officers will feel compelled to speak by the fear of reprisal for remaining silent or in the hope of more lenient treatment should he confess. [*Id*. at 296-297].

According to *Perkins*, "*Miranda* was not meant to protect suspects from boasting about their criminal activities in front of persons whom they believe to be their cellmates." *Id*. at 298. "[M]ere strategic deception by taking advantage of a suspect's misplaced trust in one he supposes to be a fellow prisoner" does not violate *Miranda*. *Id*. at 297. Neither are "[p]loys to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak . . . within *Miranda*'s concerns." *Id*. at 297.

Defendant argues that *Perkins* is distinguishable because the defendant there was an adult. This argument is unavailing given that defendant was also an adult, 19-years-old, when Blett recorded their conversation. Defendant's contention that a 19-year-old should be treated as a minor is unsupported and contrary to Michigan and federal precedent. The Michigan Supreme Court and this Court are bound by the United States Supreme Court's decisions regarding federal constitutional rights. *People v Cross*, 30 Mich App 326, 333-334; 186 NW2d 398 (1971). We are bound by the decision in *Miller* and because defendant has not successfully refuted the holding in *Perkins*, his Fifth Amendment claim fails.

Defendant next argues that admission of the wire recorded conversation violated his Sixth Amendment rights to counsel where Blett elicited statements from defendant about the Dorchester incident after defendant had been charged for the Dorchester events and invoked the right to counsel in that matter.

Both the United States and Michigan Constitutions guarantee a criminal defendant the right to counsel. US Const, Am VI; Const 1963, art 1, sec 20. "[T]he Sixth Amendment right to counsel does not attach until a prosecution is commenced, that is until the initiation of adversary criminal proceedings by a formal charge, a preliminary hearing, an indictment, an information, or an arraignment." *People v Riggs*, 223 Mich App 662, 676; 568 NW2d 101 (1997). Once a suspect has been charged with the crime, "the government may not use an undercover agent to circumvent the Sixth Amendment right to counsel." *Perkins*, 496 US at 299. However, "the Sixth Amendment is not violated whenever—by luck or happenstance—the State obtains incriminating statements

---

[9] The transcript of the conversation with Blett did not include any threatening language and appeared conversational.

from the accused after the right to counsel has attached." *Kuhlmann v Wilson*, 477 US 436, 459; 106 S Ct 2616; 91 L Ed 2d 364 (1986) (citations omitted). "[A] defendant does not make out a violation of that right simply by showing that an informant, either through prior arrangement or voluntarily, reported his incriminating statements to the police." *Id*. "Rather, the defendant must demonstrate that the police and their informant took some action, beyond merely listening, that was designed deliberately to elicit incriminating remarks." *Id*.

There is no dispute that at the time of Blett's recording, defendant had been charged for the shooting on Dorchester and had retained Attorney Kevin Floyd to represent him on that matter. However, the circumstances of defendant's case illustrate that law enforcement did not attempt to use Blett to circumvent defendant's Sixth Amendment right to counsel. Blett came to the police *after* defendant had already confessed to him that he murdered Kirkwood and shot at some people on Dorchester. Law enforcement then instructed Blett to only gather information about Kirkwood's murder at College Avenue. The actual wire recording was twelve hours long or 157 pages transcribed. During that time, Blett and defendant discussed a variety of topics. At the motion hearing, the prosecution stated it would redact those portions of the transcript that concerned Dorchester. However, defendant's statements to Blett concerning Dorchester were later properly admitted at trial under MRE 404(b)(1). Given the facts, the police did not act deliberately elicit statements from the defendant regarding Dorchester. *Kuhlmann*, 477 US at 459.

Even if this Court were to conclude that the admission of the recorded statement was an abuse of discretion, defendant cannot show the error was outcome determinative where Blett's testimony regarding what defendant told him about the Dorchester incident *before* Blett was wired was still admissible and was consistent with the wired testimony. It is noteworthy that Blett was not the only persons to whom defendant admitted the essential facts of the Dorchester incident. Defendant confessed to shooting at the children on Dorchester to Shelton and Shykaun Williams, Melville, Green, and Cannon. Additionally, as already stated, the details of what happened at Dorchester were otherwise properly admitted for their MRE 404(b)(1) use. Thus, defendant would not be entitled to reversal of his convictions where the alleged evidentiary error was not outcome determinative in his case. *King*, 297 Mich App at 472.

IV. JUDICIAL IMPARTIALITY

Defendant also argues that the trial court's comments on his guilt or innocence in front of the jury entitles him to a new trial. We disagree.

A. STANDARD OF REVIEW

"The question of whether judicial misconduct denies a defendant a fair trial is a question of constitutional law that this Court reviews de novo." *People v Stevens*, 498 Mich 162; 869 NW2d 233 (2015).

B. ANALYSIS

A criminal defendant is constitutionally guaranteed the right to a fair trial. US Const, Am XIV; Const 1963, art 1, § 17. "A trial judge's conduct deprives a party of a fair trial if a trial judge's conduct pierces the veil of judicial impartiality." *People v Stevens*, 498 Mich 162, 170; 869 NW2d 233 (2015). "A judge's conduct pierces this veil and violates the constitutional

-13-

guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id*. at 171. The inquiry requires a fact-specific analysis where the Court considers the cumulative effect of the errors. *Id*. at 171-172. We note that "[j]udicial misconduct may come in myriad forms, including belittling of counsel, inappropriate questioning of witnesses, providing improper strategic advice to a particular side, biased commentary in front of the jury, or a variety of other inappropriate actions." *Id*. at 172-173. "A defendant claiming judicial bias must overcome a heavy presumption of judicial impartiality." *People v Jackson*, 292 Mich App 583, 598; 808 NW2d 541 (2011) (quotation marks and citation omitted).

Defendant argues that the trial court interfered with the presentation of evidence, belittled defense counsel, and commented on defendant's guilt or innocence within earshot of the jury. Altogether, defendant argues 17 instances of judicial misconduct.

According to defendant, the first 12 instances involved the court interrupting defense counsel's cross-examination of witnesses.

The Michigan Code of Judicial Conduct states: "A judge may properly intervene in a trial of a case to promote expedition, and prevent unnecessary waste of time, or to clear up some obscurity[.]" Code of Judicial Conduct, Canon 3(A)(8). Further, a trial court has the authority to exercise reasonable control of the proceedings to prevent the needless consumption of time under MRE 611(a), which provides:

> The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

The defendant cited numerous instances where the court interrupted defense counsel's questioning. While, perhaps, excessive in number and occasionally sharp in tone, we do not find them to be judicial misconduct. None of the instances were belittling or an obstruction to defendant receiving a fair trial.

The next claims of judicial misconduct are that the court stated that defense counsel had gone over something "ad nauseum" and was acting unprofessionally. The trial court has the authority to direct the interrogation of witnesses so as to "promote expedition, and prevent unnecessary waste of time[.]" Code of Judicial Conduct, Canon 3(A)(8). During defense counsel's cross-examination of Blett, defense counsel repeatedly asked Blett how he first learned of Kirkwood being murdered. The court asked defense counsel to move on because counsel had asked Blett "five or six questions of the same thing now." Defense counsel's response was, "he's pretty slippery, so I just want to be—be clear with my answer." The prosecutor objected, and the trial court stated, "I agree. There's no reason to be argumentative and name calling here. Let's be a little professional, Mr. Floyd." The court's comment did not evidence bias or misconduct.

The next claims of judicial misconduct are the court's statements that defense counsel was "trying to confuse the jury" and being "misleading." Here, defense counsel had asked Detective

Fannon multiple times how many assailants Johnson reported and their complexions. Detective Fannon did not have personal knowledge of what Johnson had reported the complexions of his assailants were and defense counsel's questions for this information were repeatedly objected to by the prosecution as improper hearsay testimony. The trial court agreed and had asked defense counsel to move on multiple times. The court eventually told counsel that he was "trying to confuse the jury" and being "misleading." This is the kind of statement that is best made outside of the jury's presence but again we cannot label it misconduct.

Defendant's last claim of judicial misconduct concerns the court's response to his motion for a mistrial and allegation that the court commented on defendant's guilt or innocence. The court did make such an imprudent comment. We note that the judge was not the trier of fact here. While the court did accuse defense counsel of being dishonest, the accusation did not occur before the jury. "If the jury was not present during the exchange, [the defendant's] right to a fair and impartial jury was not violated." *People v Conley*, 270 Mich App 301, 310; 715 NW2d 377 (2006).

The claims of judicial misconduct fail. The jury was instructed to disregard whatever opinion the court may have had about the case. "Jurors are presumed to follow the court's instructions, and instructions are presumed to cure most errors." *Mullins*, 322 Mich App at 173.

## V. RESENTENCING

Defendant argues that he was entitled to resentencing because: (1) prior record variable (PRV) 7 was scored in error and his trial counsel was ineffective for failing to object to the scoring at sentencing, (2) he was sentenced on inaccurate information, and (3) his sentence was unreasonable and disproportionate.

### 1. PRV 7

"The interpretation of the sentencing guidelines and the application of facts to them are legal questions that we review de novo." *People v Duenaz*, 306 Mich App 85, 112; 854 NW2d 531 (2014). "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich. 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*. A defendant is entitled to resentencing on the basis of a scoring error if the error changes the recommended minimum sentence range under the legislative guidelines. *People v Francisco*, 474 Mich 82, 89 n8; 711 NW2d 44 (2006).

Defendant argues that the trial court improperly scored PRV 7 and that his counsel was ineffective for failing to object to the incorrect scoring at sentencing. We disagree.

PRV 7 concerns subsequent or concurrent felony convictions. Point value is assigned "if the offender was convicted of multiple felony counts or was convicted of a felony after the sentencing offense was committed." MCL 777.57(2)(a). Defendant was assigned 10 points for having "1 subsequent or concurrent conviction." MCL 777.57(1)(b).

-15-

Appellate counsel argues that defendant did not have any subsequent or concurrent felony convictions to score PRV 7. Defendant however, acknowledges in his Standard 4 Brief, that he pled guilty to "lying to a peace officer-4 yrs or more crime investigation." "A plea of guilty. . . is itself a conviction." *People v Ferguson*, 383 Mich 645, 650-651; 178 NW2d 490 (1970) (quotation marks and citation omitted). Defendant's presentence investigation report also reflects that defendant pled guilty on July 13, 2017 and was sentenced on September 7, 2017 for this offense. MCL 750.479c provides that a person who lies to a police officer while the officer is conducting a criminal investigation of a felony punishable by imprisonment for four years or more, "is guilty of a misdemeanor punishable by imprisonment for not more than 2 years . . . ." MCL 750.479c(2)(c). However, MCL 750.479c is considered a felony under the Code of Criminal Procedure, which defines "felony" as "a violation of a penal law of this state for which the offender, upon conviction, may be punished by imprisonment for more than 1 year or an offense expressly designated by law to be a felony." MCL 761.1(f). Our Supreme Court has also held "that the Legislature intended two-year misdemeanors to be considered as misdemeanors for purposes of the Penal Code, but as felonies for purposes of the Code of Criminal Procedure's habitual-offender, probation, and consecutive sentencing statutes." *People v Smith*, 423 Mich 427, 434; 378 NW2d 384 (1985). Defendant's July 31, 2017 conviction for lying to a police officer came subsequent to his murder of Kirkwood on August 22, 2016. Accordingly, the assignment of 10 points for PRV 7 was proper.

Defendant's related ineffective assistance of counsel claim is unpreserved where he neither made a motion in the trial court for a new trial or for an evidentiary hearing. *People v Sabin*, 242 Mich App 656, 658; 620 NW2d 19 (2000). We review unpreserved ineffective assistance of counsel claims for mistakes apparent on the record. *People v Williams,* 223 Mich App 409, 414; 566 NW2d 649 (1997). Where defendant's companion claim of ineffective assistance of counsel is premised on PRV 7 having been scored incorrectly, it also fails. "To establish ineffective assistance of counsel, 'the defendant must show that (1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceedings would have been different [.]" *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Defendant claims trial counsel was ineffective for failing to object to the scoring of PRV 7 at sentencing however, objecting on this basis would have been futile where, as concluded above, PRV 7 was scored correctly. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## 2. SENTENCE PROPORTIONALITY

We review de novo the trial court's interpretation and application of the statutory sentencing guidelines. *People v Jackson*, 487 Mich 783, 789; 790 NW2d 340 (2010). We review for clear error the trial court's factual determinations underlying its sentencing decision and such facts must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). A trial court's factual determination will be found clearly erroneous only if it leaves us with a definite and firm conviction that the trial court made a mistake. *People v Armstrong*, 305 Mich App 230, 242; 851 NW2d 856 (2014).

"The standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). "[A] given sentence can be said to constitute an abuse of discretion if that sentence violates the principle of proportionality, which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990).

Defendant's Michigan Department of Corrections recommended sentencing guidelines range for his second-degree murder conviction was 225 – 375 months or life. Under the statute, MCL 750.317, the trial court had the authority to sentence defendant to life or for any term of years. The court departed from the recommended sentence and sentenced defendant to 456 to 1200 months, or 38 to 100 years' imprisonment.

Defendant first argues that the court "did little to nothing to articulate its reasoning for the departure and the extent of the departure." We agree, in part.

Factors previously considered by Michigan courts in determining whether a given sentence is proportional include, among others:

(1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, id., and the defendant's potential for rehabilitation[.] [*People v Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015), aff'd in part, rev'd in part 500 Mich 453; 902 NW2d 327 (2017) (citations omitted).]

The court here explained its reasons for departure at defendant's sentencing as follows:

You're 19 years old. You already have one prior felony; two prior misdemeanors; a juvenile court record. You've had four different jail sentences and you've been on—placed on probation.

This, in summation, was a situation where you and another individual were simply walking down the street with a bicycle. There were two men that were working on a porch that you didn't know, that didn't have anything to do with you, that weren't causing you any problems, or troubles. There was some discussion about a bicycle. And ultimately, one of the gentlemen was hit in the face—you hit—in the face with a gun, and the other gentleman stepped forward, and he was shot and killed, and he was shot eight times.

There is absolutely no excuse or justification for this. This was clearly a cold-blooded murder. During the course of this trial, we heard testimony about how you had been involved in another incident where a gun had been fired numerous times. We also had—heard from numerous witnesses where you had told them about this shooting. In fact, the impression this Court received was that you were bragging about it.

You—today, you're saying you're remorseful, but I have not seen or heard that during the course of this trial or from the witnesses that talked to you.

Your Sentencing Guidelines in this matter call for a minimum sentence between 225 months and 375 months. That is a range of somewhere between 18 and three-quarters years and 31 and one-quarter year.

However, under *People v Lockridge*, those Guidelines are only advisable—or advisory. And I need to impose a reasonable sentence that is proportionate under *People v Milbourn*. I do not believe the Guidelines take into effect the fact that this man was basically slaughtered for no reason at all. That he was shot eight times. That you were bragging about this incident. That until today, you've shown absolutely no remorse whatsoever. And the fact that I am convinced, sir, that you cannot conform yourself to society, nor should you be allowed to live in society. I think you are a danger to the people of this community and those Guidelines do not take that into effect.

To summarize, the court noted defendant's age, criminal history, failure to be rehabilitated, defendant's relationship to the victim, the cold-blooded nature of the murder, that defendant was bragging about the murder afterward, defendant's lack of remorse, and defendant's danger to society as reasons for its departure. While a trial judge's opinion or speculation about a defendant's future dangerousness is not a proper justification for the imposition of a departure sentence, *People v Anderson*, 298 Mich App 178, 189; 825 NW2d 678 (2012); *People v Horn*, 279 Mich App 31, 44-45; 755 NW2d 212 (2008), the court's other cited reasons were legitimate, *Steanhouse*, 313 Mich App at 46. A sentencing court may consider the defendant's conduct before and after an arrest, *People v Fields*, 448 Mich 58, 77; 528 NW2d 176 (1995); the defendant's lack of remorse, *People v Wesley*, 428 Mich 708; 411 NW2d 159 (1987), and the prior relationship between the victim and offender, *Milbourn*, 435 Mich at 660–661.

Further, "[w]here there is a departure from the sentencing guidelines, an appellate court's first inquiry should be whether the case involves circumstances that are not adequately embodied within the variables used to score the guidelines." *Id*. at 659–660. Trial courts are "entitled to depart from the guidelines if the recommended ranges are considered an inadequate reflection of the proportional seriousness of the matter at hand." *Id*. at 661. See also *People v Parr*, 197 Mich App 41, 46; 494 NW2d 768 (1992) ("Departure is appropriate where the guidelines do not adequately account for important factors legitimately considered at sentencing."). Of the eight offense variables that defendant was assessed points for,[10] none accounted for defendant's lack of remorse, bragging about the offense afterward, or the cold-blooded nature of the crime.

While the trial court articulated reasons to support a departure, it is unclear whether the same reasons also justified the extent of the departure. See *People v Smith*, 482 Mich 292, 304;

---

[10] OV 1 (aggravated use of a weapon); OV 2 (lethal potential of weapon possessed); OV 3 (physical injury to victim); OV 5 (psychological injury to member of victim's family); OV 6 (offender's intent to kill or injure); OV 9 (number of victims); OV 10 (exploitation of vulnerable victim); and OV 13 (continuing pattern of criminal behavior).

754 NW2d 284 (2008) ("When departing, the trial court must explain why the sentence imposed is more proportionate than a sentence within the guidelines recommendation would have been."). "[S]entencing courts must justify the sentence imposed in order to facilitate appellate review." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). Accordingly, we vacate defendant's sentence for second-degree murder and we remand this case to the trial court for it to articulate why the departure was warranted or resentence defendant.

Defendant further argues that his sentence was unreasonable and disproportionate because the court did not consider that defendant was a juvenile when he committed the crime nor consider his potential for rehabilitation. Defendant argues that the United States Supreme Court observed in *Miller v Alabama*, 567 US 460, 465; 132 S Ct 2455; 183 L Ed 2d 407 (2012), that juveniles have a lessened culpability and greater capacity for change. Also, that when fashioning a sentence for a juvenile offender, the court should consider certain mitigating factors. *Id*. at 477-478. Defendant contends that the facts of his case illustrated an impulsive and unreasoned action akin to juvenile behavior, instead of a cold-blooded premeditated murder. He further deduces that the jury verdict acquitting him of first-degree felony murder supported that contention. Defendant acknowledges that the tenets of *Miller* only apply in cases where a juvenile is sentenced to life without parole, and that he was sentenced to a term of years. See *People v Wines*, 323 Mich App 343, 352; 916 NW2d 855 (2018) (" . . . there is no *constitutional* mandate requiring the trial court to specifically make findings as to the *Miller* factors except in the context of a decision whether to impose a sentence of life without parole.") Thus, the sentencing court was not required to make any of the findings or consideration of mitigating factors under *Miller* in defendant's case. However, the court otherwise considered defendant's youth in sentencing. The first fact noted by the court was defendant's age. Defendant's sentencing judge was also the same judge who had presided over his trial and therefore, was aware of defendant's age at the time of the commission of the offense. The court also considered defendant's capacity for rehabilitation when it recited defendant's criminal history up until this offense and defendant's potential to be a productive member of society in the future. Further, when presiding over defendant's trial, the court stated in a prior motion hearing that, it was "very concerned about this case. This is a murder case with a young defendant, who's looking at a very serious charge here that could affect this young man the rest of his [life][.]"

Defendant additionally faults his trial counsel for not presenting any mitigating evidence at his sentencing, including the failure to file a sentencing memorandum or mention defendant's juvenile status. This claim is unpreserved where defendant neither made a motion in the trial court for a new trial or for an evidentiary hearing. *Sabin*, 242 Mich App at 658. We review unpreserved ineffective assistance of counsel claims for mistakes apparent on the record. *Williams,* 223 Mich App at 414. "To establish ineffective assistance of counsel, 'the defendant must show that (1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceedings would have been different [.]" *Strickland*, 466 US at 694.

Defendant first argues that defense counsel was ineffective for not arguing information regarding the juvenile brain and defendant's juvenile status as mitigating factors at defendant's sentencing. As mentioned earlier, defendant's sentencing judge was also his presiding trial judge and was therefore already aware of defendant's age. Counsel was further not ineffective for not arguing the specific information regarding the development of the juvenile brain into adulthood

that defendant attaches on appeal because the contention is but one in a variety of issues to be highlighted at sentencing and would result in this Court assessing counsel's competence with the benefit of hindsight, which this Court will not do. *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). Defendant cannot otherwise prove that the absence of this argument at sentencing was outcome determinative where the sentencing court was not required to consider any mitigating factors for defendant's term-of-years sentence under *Miller*. Regardless, defense counsel did argue at sentencing that defendant was extremely remorseful, that the court was aware of all the facts having sat in the trial, that defendant was "at the very forefront of his life," that he had a daughter, and the offense was a serious matter that would also impact the defendant for the rest of his life. Defendant last argues that counsel was ineffective because he failed to file a sentencing memorandum. Defendant fails to cite any support that would impose this duty on defense counsel such that the failure to do so would place counsel's performance below an objective standard of reasonableness.

Defendant's convictions and sentence for felony firearm are affirmed. Defendant's sentence for second-degree murder is vacated and remanded to the trial court for articulation as to the reasons for the extent of its departure or resentencing. We do not retain jurisdiction.


/s/ David H. Sawyer
/s/ Jane E. Markey
/s/ Cynthia Diane Stephens