*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

ALEXANDER ALLI, Personal Representative of the
ESTATE OF BERNADINE ALLI,

        Plaintiff-Appellee,

v

WILLIAM BEAUMONT HOSPITAL, doing
business as BEAUMONT HOSPITAL–TROY,

        Defendant-Appellant.

UNPUBLISHED
November 19, 2025
9:27 AM

No.  368268
Oakland Circuit Court
LC No.  2022-196315-NH

---

DIANA HALL, Personal Representative of the
ESTATE OF VERONICA WILLIAMS-HALL,

        Plaintiff-Appellee,

v

WILLIAM BEAUMONT HOSPITAL, doing
business as BEAUMONT HEALTH SYSTEM,
BOTSFORD GENERAL HOSPITAL, doing
business as BOTSFORD HOSPITAL and
BEAUMONT HOSPITAL-FARMINGTON,
BEAUMONT HEALTH, FARMINGTON
EMERGENCY MEDICINE ASSOCIATES PLC,
BOTSFORD MEDICAL IMAGING PC, KRISTIN
M. KAMIENECKI, D.O., ALEX MARTIN, D.O.,
DAWN C. ZELENKA-JOSHOWITZ, D.O., and
MICHAEL ERIC ALPER, D.O.,

        Defendants-Appellants.

No.  368395
Oakland Circuit Court
LC No.  2023-198733-NH

---

Before:  REDFORD, P.J., and CAMERON and PATEL, JJ.

PER CURIAM.

-1-

These consolidated cases primarily involve the interpretation of the Pandemic Health Care Immunity Act (PHCIA), MCL 691.1471 *et seq*. In Docket No. 368268, plaintiff, Alexander Alli, as the personal representative of the estate of Bernadine Alli, pursued a medical-malpractice action against defendant, William Beaumont Hospital.[1] Defendant appeals by leave granted the trial court's order denying its motion for summary disposition. In Docket No. 368395, plaintiff, Diana Hall, as personal representative of the estate of Veronica Williams-Hall, pursued a medical-malpractice case against defendants, William Beaumont Hospital, Botsford General Hospital,[2] Beaumont Health, Farmington Emergency Medicine Associates PLC, Botsford Medical Imaging PC, Kristin M. Kamienecki, D.O, Alex Martin, D.O., Dawn C. Zelenka-Joshowitz, D.O., and Michael Eric Alper, D.O. These defendants appeal by leave granted the trial court's order denying their motion for summary disposition.[3]

Although a coronavirus (COVID-19) diagnosis or treatment is not necessary to invoke immunity under the PHCIA, there must still be "some connection" between the medical care provided and the provider's response to the COVID-19 pandemic to warrant immunity. Because there was such a connection in Docket No. 368268, the trial court erred by denying defendant's motion for summary disposition. We also hold that plaintiff failed to show how the retroactive application of the PHCIA was unconstitutional. However, in Docket No. 368395, because defendants failed to produce evidence showing that such a connection existed, the trial court properly denied defendants' motion for summary disposition.

I. BACKGROUND

A. DOCKET NO. 368268

This medical-malpractice action arises from decedent Bernadine Alli's fall while a patient at Beaumont Hospital-Troy in April 2020.[4] Bernadine, a 77-year old woman, presented to the emergency department at Beaumont Hospital-Troy on April 22, 2020, complaining of back pain from a recent back surgery, cough, weakness, fatigue, and nausea. Bernadine tested positive for COVID-19, was placed in a COVID-19 unit, and treated for that virus. Because of her reported back pain, she was given morphine as needed.

On April 25, 2020, a nurse noted that Bernadine had engaged in "some confused conversation" and had an unsteady gait. The nurse entered an order for "High Risk Fall Precautions." On April 27, 2020, Bernadine was seen exhibiting confusion and having an inability

---

[1] Doing business as Beaumont Health System.

[2] Doing business as Botsford Hospital and Beaumont Hospital-Farmington.

[3] This Court granted both applications for leave to appeal and consolidated the two cases. *Estate of Alli v William Beaumont Hosp*, unpublished order of the Court of Appeals, entered March 20, 2024 (Docket No. 368268); *Estate of Williams-Hall v William Beaumont Hosp*, unpublished order of the Court of Appeals, entered March 20, 2024 (Docket No. 368395).

[4] To avoid any confusion with plaintiff, Alexander Alli, who is the personal representative of Bernadine Alli's estate, we will refer to decedent as "Bernadine."

to understand her surroundings or comply with safety instructions. On April 28, 2020, Bernadine fell out of her bed and sustained injuries, including a subdural hemorrhage, a subarachnoid hemorrhage, lacerations to her face, and multiple fractures. Bernadine eventually was discharged on May 7, 2020, to a subacute rehabilitation center. Bernadine died on June 6, 2022, in her daughter's home in North Carolina. Plaintiff alleged that Bernadine's death was caused by the fall.

Plaintiff filed suit on the theory that the hospital staff did not properly identify and react to Bernadine's fall risk. Plaintiff also maintained that the hospital had an insufficient number of nurses working and that the hospital failed to properly train and supervise its staff.

Defendant moved for summary disposition under MCR 2.116(C)(7), arguing that it was entitled to immunity under Michigan's PHCIA and the federal Public Readiness and Emergency Preparedness Act (PREP Act), 42 USC 247d-6d. In response, plaintiff argued that defendant was not entitled to immunity under the PHCIA because Bernadine's injuries arose out of general nursing malpractice of failing to have appropriate fall-intervention measures in place and not out of "health care services in support of this state's response to the COVID-19 pandemic." Plaintiff also asserted that retroactive application of the PHCIA was unconstitutional because it purported to alter rights that vested before its October 2020 enactment. The trial court denied defendant's motion, explaining that "this particular fact pattern is outside the intention of the legislation."

## B. DOCKET NO. 368395

The medical-malpractice action in this case arises from the treatment decedent Veronica Williams-Hall received in the emergency room at Beaumont Hospital-Farmington Hills shortly after the start of the COVID-19 pandemic.[5] Veronica was 66 years old when she presented to the hospital on March 29, 2020, at approximately 1:00 a.m. Veronica's primary complaint was "upper center back pain" that she had been experiencing since approximately 10:30 p.m. The emergency-room doctors concluded that Veronica's pain was "most likely musculoskeletal," and they discharged her at 2:12 a.m. with pain medications and instructions to return if she developed any "numbness or weakness in extremities[;] bowel or bladder incontinence[;] or worsening pain despite medication." At 2:30 a.m., Veronica called her daughter, Diana Hall, and informed her that she was home but still in pain. At 11:00 a.m., Diana went to Veronica's home and found her unresponsive in bed. An autopsy revealed that Veronica had died from ruptured aortic dissection.[6]

Plaintiff filed the instant complaint alleging medical malpractice. Plaintiff's theory was that defendants violated the standard of care with respect to how they failed to properly evaluate

---

[5] To avoid any confusion with plaintiff, Diana Hall, who is the personal representative of Veronica Williams-Hall's estate, we will refer to decedent as "Veronica."

[6] An aortic dissection is a serious condition in which a tear occurs in the inner layer of the body's main artery, the aorta. Complications from aortic dissection include severe internal bleeding, organ damage, stroke, and aortic regurgitation. Mayo Clinic, *Aortic dissection* <https://www.mayoclinic.org/diseases-conditions/aortic-dissection/symptoms-causes/syc-20369496> (accessed September 22, 2025).

Veronica, which left her dissecting aortic aneurysm to go undiagnosed and untreated, resulting in her death.

Defendants moved for summary disposition under MCR 2.116(C)(7), (8), and (10), arguing that they were entitled to immunity under the PHCIA and Executive Order No. 2020-30. Defendants maintained that this immunity applied even though Veronica was not a COVID-19 patient because "they were using their resources in response to the COVID-19 pandemic." Plaintiff in response argued that defendants' interpretation of the PHCIA was overly broad and inconsistent with the statutory language. Plaintiff instead maintained that any immunity only applied when the person was injured "by reason of" COVID-19-related treatment and services, which were not present in Veronica's case. The trial court denied defendants' motion, explaining that defendants were reading the statute too broadly. These appeals followed.

## II. DISCUSSION

### A. IMMUNITY GRANTED UNDER THE PHCIA

#### 1. STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008) (quotation marks and citation omitted). A party is entitled to summary disposition under MCR 2.116(C)(7) if, among other things, the plaintiff's claims are barred because of "immunity granted by law." Parties may support their respective positions with affidavits, depositions, admissions, or other documentary evidence. MCR 2.116(G)(5). "The contents of the complaint are accepted as true unless contradicted by the evidence provided." *Odom*, 482 Mich at 466 (quotation marks and citation omitted).

The proper interpretation of a statute is also reviewed de novo. *Stanton v Battle Creek*, 466 Mich 611, 614; 647 NW2d 508 (2002).

#### 2. RELEVANT PRINCIPLES

The PHCIA was enacted in response to the COVID-19 pandemic. See *Franklin v McLaren Flint*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 366226); slip op at 4-5. As this Court explained, "[t]he global outbreak of the COVID-19 pandemic was one of the most threatening public-health crises of modern times." *Id*. at ___; slip op at 4 (quotation marks and citation omitted). Following Governor Whitmer's declared state of emergency on March 10, 2020, she issued various executive orders in response to the health crisis. *Id*. Of particular relevance is EO 2020-30, which was executed on March 29, 2020, and provided, in pertinent part:

> Consistent with MCL 30.411(4), any licensed health care professional or designated health care facility that provides medical services in support of this state's response to the COVID-19 pandemic is not liable for an injury sustained by a person by reason of those services, regardless of how or under what circumstances or by what cause those injuries are sustained, unless it is established that such injury or death was caused by the gross negligence, as defined in MCL 30.411(9), of such health care professional or designated health care facility.

-4-

The immunity conferred in this executive order was continued by Executive Order No. 2020-61, but was rescinded on July 15, 2020, by Executive Order No. 2020-150.

After the issuance of these executive orders, the Legislature enacted the PHCIA with an immediate effective date of October 22, 2020. 2020 PA 240. Section 5 of the PHCIA mirrored the language of the earlier executive orders:

> A health care provider or health care facility that provides health care services in support of this state's response to the COVID-19 pandemic is not liable for an injury, including death, sustained by an individual by reason of those services, regardless of how, under what circumstances, or by what cause those injuries are sustained, unless it is established that the provision of the services constituted willful misconduct, gross negligence, intentional and willful criminal misconduct, or intentional infliction of harm by the health care provider or health care facility. [MCL 691.1475.]

The Legislature explicitly made this act retroactive, applying to all claims "on or after March 29, 2020 and before July 14, 2020." MCL 691.1477.

This Court has addressed the immunity granted by the PHCIA in three published opinions. First, in *Franklin*, the plaintiff was admitted to the hospital on March 31, 2020, for shortness of breath. *Franklin*, ___ Mich App at ___; slip op at 1. He was diagnosed and treated for COVID-19. *Id*. at ___; slip op at 1-2. On April 6, 2020, while the plaintiff was still in the hospital, bedsores were first documented on his body. *Id*. at ___; slip op at 2. The plaintiff filed a medical-malpractice suit premised on the failure to assess and treat the bedsores. *Id*. The plaintiff had argued that in order to qualify for immunity under the PHCIA, the healthcare provided must have been provided specifically to support the state's response to the pandemic and not care provided in the ordinary course of business. *Id*. at ___; slip op at 6. This Court disagreed, and after consulting various dictionary definitions, held that a defendant is protected under the statute "if it provided any healthcare services that assisted, helped, or promoted the state's reactions and actions taken as a result of the COVID-19 pandemic," including "healthcare services that healthcare facilities like defendant gave to those infected with COVID-19 and regular healthcare services provided during the statutory period." *Id*. at ___; slip op at 8. Simply put, the immunity provision of MCL 691.1475 covers "both regular medical care and medical treatment specific to COVID-19." *Id*. The Court further reasoned that the consequence of redirecting hospital resources to fighting the pandemic was that other areas of medical care necessarily lost resources. *Id*.

Second, in *Skipper-Baines v Bd of Hosp Managers for City of Flint*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 365137); slip op at 1, the 91-year-old decedent was admitted to the hospital after being found unresponsive. The decedent was placed in a room with a mentally unstable roommate who had a known propensity for violent outbursts. *Id*. The decedent underwent a minor surgical procedure to treat gallbladder disease. *Id*. After being returned to his room, the roommate attacked the decedent and inflicted serious harm. *Id*. at ___; slip op at 1-2. The decedent's health continued to decline, and he eventually died. *Id*. at ___; slip op at 2. Notably, the decedent had contracted COVID-19 at some point after being admitted to the hospital. *Id*. Decedent's cause of death was " 'COVID-19 associated pneumonia and complications thereof complicated by hypertensive and atherosclerotic cardiovascular disease.' " *Id*.

The *Skipper-Baines* Court held that the services that allegedly caused the decedent's injury were not given "in support of this state's response to the pandemic." *Id*. at ___; slip op at 3 (quotation marks omitted). The Court reasoned:

> The alleged negligent act was placing [the decedent] in a room with an unsafe roommate, and the alleged omission was failing to deploy adequate safeguards to protect the decedent from the roommate whom was known to be unsafe. It is clear to us that neither of those were done in support of the pandemic response. There certainly will be gray area with respect to whether medical services were offered in support of the state's pandemic response, but this particular case is black and white. The alleged acts, omissions, and injuries were wholly unrelated to the pandemic, so deeming defendant immune would contravene the Legislature's clearly-communicated intent to limit this immunization to services stemming from the pandemic. The fact that the decedent apparently contracted COVID-19 at some point following his admission does not change the fact that he was not being treated at the hospital for COVID-19 or that the incident giving rise to this litigation was completely separate. [*Id*. at ___; slip op at 3.]

The Court went on to clarify that immunity does not apply only when the patient is being treated for COVID-19; but there must be "some connection" with the hospital's response to COVID. *Id*. at ___; slip op at 4. As an example, the Court suggested that "if an unrelated emergency was not timely dealt with because hospital staff were overwhelmed with COVID-19 patients," immunity could apply. *Id*. The Court noted that its holding was consistent with *Franklin* because the *Franklin* Court likewise did not hold that all hospitals that treated COVID-19 were immune from all malpractice actions not premised on gross negligence. *Id*., citing *Franklin*, at ___; slip op at 9.

Finally, in *Jokinen v Beaumont Hosp Troy*, ___ Mich App ___; ___ NW3d ___ (2025) (Docket No. 370983); slip op at 1, the decedent was admitted to the hospital on April 8, 2020, because she was suffering from an altered mental state after a fall. Although there were signs of bruises on the decedent's body, there was no indication of any pressure-related injuries, such as bedsores. *Id*. The decedent was evaluated as a medium-to-high risk for developing pressure-related injuries. *Id*. On April 10, 2020, a skin tear was noticed and treated over the next 10 days. *Id*. at ___; slip op at 1-2. Almost two weeks after being admitted, the decedent was discharged from the hospital and transferred to another facility where her condition continued to deteriorate. *Id*. at ___; slip op at 2. The decedent was repeatedly assessed for COVID-19 symptoms, but no symptoms were ever noted. *Id*. On May 12, 2020, the decedent was admitted to the hospital with a sacral decubitus ulcer,[7] and she passed away two days later. *Id*.

While applying *Franklin* and *Skipper-Baines*, the *Jokinen* Court held that immunity from the PHCIA did not apply to the defendants because, unlike the plaintiff in *Franklin*, the decedent

---

[7] "Bedsores also are called pressure ulcers, pressure injuries and decubitus ulcers." Mayo Clinic, *Bedsores (pressure ulcers)* <https://www.mayoclinic.org/diseases-conditions/bed-sores/symptoms-causes/syc-20355893> (accessed September 22, 2025).

was not admitted with symptoms of COVID-19 and was never treated for COVID-19. *Id*. at ___; slip op at 7. The Court rejected the defendants' argument that any deficiency in care was "a byproduct of the very demand, restrictions, protocols, uncertainties, and overall chaos considered by the governor and the legislature." *Id*. The Court stressed that the trial court granted summary disposition under MCR 2.116(C)(8), and under that subrule, only the pleadings are considered. *Id*. Because nothing in the complaint suggested that any factual basis for the defendants' argument exists, this Court reversed the grant of summary disposition under MCR 2.116(C)(8).[8] *Id*.

### 3. APPLICATION TO DOCKET NO. 368268

The circumstances of Bernadine's case, for all relevant purposes, are indistinguishable from the circumstances in *Franklin*. As in *Franklin*, Bernadine was diagnosed and treated for COVID-19. Although the alleged malpractice in the instant case related to the failure to identify and take steps to mitigate any risk of Bernadine falling out of her bed, this type of medical care would be "regular medical care" in support of the state's response to the pandemic, and under *Franklin*, is still covered under the PHCIA.[9] Therefore, defendant is entitled to immunity under the PHCIA, and the trial court erred by ruling otherwise.[10]

### 4. APPLICATION TO DOCKET NO. 368395

Applying the holdings of *Franklin*, *Skipper-Baines*, and *Jokinen* to the present case, it is undisputed that Veronica did not have COVID-19 and was not treated for COVID-19. But as *Skipper-Baines* instructs, that is not dispositive. The key is whether there was "some connection" between Veronica's injuries and defendants' response in support of the COVID-19 pandemic. *Skipper-Baines*, ___ Mich App at ___; slip op at 4. The burden was on defendants to show that immunity from the PHCIA applied. See *AFSCME v Detroit*, 267 Mich App 255, 261; 704 NW2d 712 (2005) ("The moving party has the initial burden to support its claim for summary disposition under MCR 2.116(C)(7) . . . by affidavits, depositions, admissions, or other documentary evidence."). In support of their motion for summary disposition, defendants cited no evidence to show that their treatment of Veronica was connected to their response to the COVID-19 pandemic. Instead, defendants merely averred that the PHCIA afforded blanket protection to all healthcare providers during the pertinent period. As noted, there must be some connection between the injuries and the provider's response to the COVID-19 pandemic. Because defendants failed to

---

[8] The Court expressly limited its analysis to MCR 2.116(C)(8) and declined to address whether summary disposition was warranted under MCR 2.116(C)(7), which allows review of submitted evidence.

[9] Plaintiff acknowledges that after applying the holding of *Franklin*, defendant is entitled to immunity. He contends that *Franklin* was incorrectly decided; however, this Court is bound by *Franklin*. MCR 7.215(J)(1). Further, because *Franklin* was reasonably decided, we decline to convene a conflict panel under MCR 7.215(J)(3).

[10] Because we hold that defendant was immune from suit under the PHCIA, we decline to address the other basis for defendant's motion for summary disposition—whether it was also immune from suit under the PREP Act.

offer any evidence to show how this necessary nexus existed, the trial court properly denied defendants' motion for summary disposition.

## B. CONSTITUTIONALITY OF THE RETROACTIVE APPLICATION OF THE PHCIA

In Docket No. 368268, plaintiff argues that if immunity applies under the PHCIA, then we should affirm in any event because the PHCIA is unconstitutional as a result of its retroactive application depriving plaintiff of a vested right. We disagree.

Although the trial court never addressed the constitutionality of the PHCIA, plaintiff did raise the issue in response to defendant's motion for summary disposition. See *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020) ("[I]ssue preservation requirements only impose a general prohibition against raising an issue for the first time on appeal."); *Truel v Dearborn*, 291 Mich App 125, 137; 804 NW2d 744 (2010) ("Although an appellee need not file a cross-appeal to argue an alternative basis for affirming the trial court's decision, an appellee cannot obtain a decision more favorable than the decision rendered by the trial court."). Therefore, we will review it.

When a party challenges the constitutionality of a statute, the statute is presumed constitutional, and the challenging party bears a heavy burden of rebutting that presumption. *Crego v Coleman*, 463 Mich 248, 260; 615 NW2d 218 (2000); see also *Zdrojewski v Murphy*, 254 Mich App 50, 75; 657 NW2d 721 (2002) ("The party challenging the constitutionality of a statute has the burden of proving the invalidity of the law."). Plaintiff claims that the PHCIA is unconstitutional because it, in essence, took away Bernadine's vested right of being able to sue defendant (without it having immunity). "[C]onstitutional due process principles act to prevent retrospective laws from divesting property rights or vested rights." *GMAC LLC v Treasury Dep't*, 286 Mich App 365, 377; 781 NW2d 310 (2009). Assuming that the ability to sue a party without immunity on a claim of medical malpractice is a vested right, see *Buhl v Oak Park*, 507 Mich 236, 246-247; 968 NW2d 348 (2021) (treating a suit against a city for negligence without application of the open-and-obvious doctrine as a vested right), this argument fails for one primary reason. At the time when the claim accrued on April 28, 2020, EO 2020-61 was in effect and provided the same immunity described in the later-enacted PHCIA.[11] Consequently, when plaintiff's claim accrued, defendant was already entitled to the same immunity that would later be codified by the PHCIA. Therefore, Bernadine's ability to sue defendant was no different on April 28, 2020, as compared to after the PHCIA was enacted in October 2020, which vitiates plaintiff's constitutional argument.

## III. CONCLUSION

In Docket No. 368268, because defendant was entitled to immunity under the PHCIA, the trial court erred by denying defendant's motion for summary disposition. We reverse and remand

---

[11] Plaintiff does not challenge the constitutionality of any of the Governor's executive orders.

for entry of summary disposition in favor of defendant. We do not retain jurisdiction. In Docket No. 368395, we affirm the denial of defendants' motion for summary disposition.[12]

/s/ James Robert Redford
/s/ Thomas C. Cameron
/s/ Sima G. Patel

---

[12]We note, in addition to the three published cases discussed, our Court has addressed the questions raised in these matters in several unpublished decisions as well and arrived at essentially the same conclusions as in the published decisions. See *Anderson v Ascension Providence Hosp*, unpublished per curiam opinion of the Court of Appeals, issued December 18, 2024 (Docket No. 365559) (applying PHCIA immunity when the plaintiff sought mental-health treatment for a risk of suicide for pandemic-related stress and suffering a fall when left unassisted by the defendant hospital); *Harris v Rhema-Belmont Operating, LLC*, unpublished per curiam opinion of the Court of Appeals, issued January 27, 2025 (Docket No. 367678) (applying PHCIA immunity where a decedent developed pressure wounds and died while she was being treated for COVID-19 related pneumonia); *Monroe v St Joseph Hosp, Pontiac, Trinity Health-Mich*, unpublished per curiam opinion of the Court of Appeals, issued March 21 2025 (Docket No. 368667) (applying PHCIA immunity to a patient admitted with generalized weakness, low blood pressure, and a diagnosis of likely COVID-19 who suffered pressure wounds while in the defendant's care); *Pakenas v McLaren Macomb*, unpublished per curiam opinion of the Court of Appeals, issued September 11, 2025 (Docket Nos. 369752 and 372858) (finding PHCIA immunity did not apply to the claims of a patient who slipped and fell in a pre-discharge shower when briefly left unattended and the patient had never been treated or diagnosed with COVID-19).